IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **JAMES W. MOODY,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | No. 2:18-cv-02413 |
| | : | |
| v. | : | |
| | : | |
| **THE CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2018, upon consideration of Defendants' Second Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED** and that Plaintiff's claims are dismissed.

BY THE COURT:

_____
Juan R. Sánchez, C.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES W. MOODY, | : |
| Plaintiff, | : CIVIL ACTION <br> : No. 2:18-cv-02413 |
| v. | : |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendant | : |

## DEFENDANTS' SECOND MOTION TO DISMISS

Defendants the City of Philadelphia, the Philadelphia Police Department, the Gun Permit Unit, Commissioner Richard Ross, Jr., the Board of License & Inspection, and Bradford A. Richman, by and through the undersigned counsel, hereby file this Second Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them with prejudice.

Date: October 22, 2018

Respectfully submitted,

 /s/ Andrew F. Pomager
Andrew F. Pomager
Assistant City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES W. MOODY, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : No. 2:18-cv-02413 |
| v. | : |
| | : |
| THE CITY OF PHILADELPHIA, et al. | : |
| | : |
| Defendant | : |
| | : |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' SECOND MOTION TO DISMISS**

Plaintiff James W. Moody's Amended Complaint against Defendants the City of Philadelphia (the "City"), the Philadelphia Police Department (the "PPD"), the Gun Permit Unit, Commissioner Richard Ross, Jr., the Board of Licenses & Inspection (the "Board"), and Bradford A. Richman should be dismissed because the Court should abstain from jurisdiction over claims regarding the revocation of his license to carry a firearm (LTCF) pursuant to Younger v. Harris. 401 U.S. 37 (1971). Moreover, Plaintiff's remaining claims should be dismissed as they are not properly pled and fail to state a claim upon which relief can be granted.

**I.   BACKGROUND**

This case involves two incidents where Plaintiff was stopped while carrying a firearm and refused to identify himself or produce his LTCF. See Am. Compl. at ¶¶ 117–18, 168, 305–07 (ECF No. 4).

   **A.   Procedural Background**

On May 1, 2018, Plaintiff initiated this action by filing his Complaint in Pennsylvania state court. Compl, Notice of Removal at 6–10 (ECF No. 1). Defendants removed this action to the jurisdiction of this Court on June 8, 2018. See generally Notice of Removal (ECF No. 1).

Defendants moved to dismiss for failure to state a claim. Mot. Dismiss (ECF No. 2). On September 13, 2018, Plaintiff filed a response to the motion, which the Court accepted as Plaintiff's Amended Complaint. See Am. Compl. (ECF No. 4); Order 10/2/18 (ECF No. 5).

### B.  The Voluminous and Unfocused Nature of the Amended Complaint

In stark contrast to the 3-paragraph Complaint, the Amended Complaint contains 114 pages: 82 pages contain the 355 numbered paragraphs and 32 pages contain 8 exhibits. See generally, Am. Compl. (ECF No. 4). Except as referred to in the following factual sections, Plaintiff's allegations are largely duplicative, conclusory, editorial, or irrelevant. Plaintiff's factual allegations are out of order and facts relating to discrete incidents are spread across various sections. Plaintiff's voluminous exhibits contain, for example, a restatement of many of his allegations, possibly as used in a separate action. See Motion Response, Am. Compl. at 94, Ex. E (ECF No. 4). The Amended Complaint incorporates by reference two YouTube videos with a total length of 1 hour, 27 minutes, and 59 seconds. See Am. Compl. at ¶ 192 (ECF No. 4).

### C.  Plaintiff's May 2, 2016 Stop by Police and Subsequent LTCF Revocation

On May 2, 2016, Plaintiff alleges he was "intercepted" by Officer Cave. See Am. Compl. at ¶ 117–18 (ECF No. 4). Plaintiff alleges that, later, "Officer Cave . . . testified that the sole reason he stopped [Plaintiff] was because he was carrying a firearm." Id. at ¶ 118. Additional officers arrived, handcuffed, and searched Plaintiff. Id. at ¶ 120–21, 154. During the interaction, the officers found Plaintiff's LTCF and Officer Cave was informed by radio that he had a valid LTCF. Id. at ¶ 97. Plaintiff does not allege he was held further, arrested, or charged as a result.

On May 11, 2016, Plaintiff's LTCF was revoked pursuant to 18 Pa. Cons. Stat. Ann. § 6109. Am. Compl. at ¶ 15 (ECF No. 4). The revocation letter indicates the LTCF was revoked for "good cause" and that Plaintiff "[f]ail[ed] to produce LTCF & placed officers and community in danger." See Revocation Letter 5/11/16, Am. Compl. at 86, Ex. A (ECF No. 4); see Am.

Compl. at ¶¶ 16–17 (ECF No. 4). Plaintiff alleges he received no notice or hearing prior to the May 11, 2016 revocation letter. Am. Compl. at ¶¶ 40–41.

### D. Plaintiff's Administrative and State Remedies for the first LTCF Revocation

Plaintiff appealed the revocation to the Board. See id. at ¶ 54. On November 8, 2016, a hearing was held. Id. at ¶ 93. Plaintiff complains that, when the Board affirmed the revocation, "[n]o findings of fact or specific reasons were given for the affirmation." Id. at ¶ 55. Plaintiff further appealed this decision to the Philadelphia Court of Common Pleas. See Appeal, John Doe v. Phila. Bd. of License and Inspection Review, No. 161200140 (Phila. C.C.P. Dec. 5, 2016).[1] On June 5, 2017, Richman, as counsel for the City, notified Plaintiff that his LTCF would be reinstated. Am. Compl. at ¶ 165 (ECF No. 4). Accordingly, the appeal to the Court of Common Pleas was dismissed as moot on July 12, 2017. See Order 7/12/17, John Doe, No. 161200140 (Phila. C.C.P. July 12, 2017).

### E. Plaintiff's June 16, 2017 Stop by Police and Subsequent LTCF Revocation

Prior to that dismissal, but in the week following the June 5, 2017 reinstatement, Plaintiff picked up his reinstated LTCF. See Am. Compl. at ¶¶ 165–166 (ECF No. 4). On June 16, 2017, Plaintiff was "accosted" by police while jogging. Id. at ¶ 168. Plaintiff refused to identify himself or comply with a request to see his LTCF. Id. at ¶¶ 171, 213. One of the officers allegedly stated, "As far as I know, your permit was revoked!" Id. at ¶ 209. Plaintiff was handcuffed and placed in a hot wagon "for more than 30 minutes." Id. at ¶ 170. Despite Plaintiff's complaint that the officers did not make "a simple phone call to ascertain" the status of his LTCF—albeit without Plaintiff having identified himself—the officers apparently determined at some point that

---

[1] A matter of public record may be considered by the Court on a motion to dismiss. See Grp. Against Smog & Pollution, Inc. v. Shenango, Inc., 810 F.3d 116, 127 (3d Cir. 2016). To provide a degree of brevity, the referenced filings from this action are not attached hereto but can be provided by undersigned counsel to the Court and Plaintiff upon request.

Plaintiff's LTCF was valid. See id. at ¶ 210, 231.  Plaintiff was ultimately released without arrest but his firearm was seized. Id. at ¶¶ 173–74. Plaintiff was cited for a disorderly conduct. Code Violation Notice, Am. Compl. at 116, Ex. H (ECF No. 4).

Plaintiff quotes various disjointed and mostly unattributed statements he claims the officers made during the June 16, 2017 encounter. See Am. Compl. at ¶¶ 226–37 (ECF No. 4). The import of these statements is not made entirely clear by Plaintiff, although he presumably intends them to demonstrate some sort of malfeasance on behalf of the officers.

On June 20, 2017, Plaintiff's LTCF was again revoked as a result of the June 16, 2017 incident. See id. at ¶ 284. The revocation letter indicated the revocation was for good cause and that Plaintiff failed to produce his LTCF, placing Plaintiff, police officers, and the community in danger. See Revocation Letter 6/20/17, Am. Compl. at 109, Ex F (ECF No. 3). Plaintiff again complains he was provided no notice or hearing prior to receiving the letter. Id. at ¶¶ 284–88 (ECF No. 4). On August 3, 2017, in response to a letter from Plaintiff, the PPD informed Plaintiff he could petition the courts for return of the LTCF. PPD Letter 8/3/17, Am. Compl. at 115, Ex. H (ECF No. 4). Plaintiff did not allege he appealed this revocation to the Board.[2]

### F. Allegations, or Lack Thereof, Concerning Defendants Brad Richman and Richard Ross, Jr.

Plaintiff's allegations concerning the individual Defendants Richman and Ross are sparse. Plaintiff alleges Richman "is mentioned several times in conjunction with the unlawful taking (stealing) of the firearm: 'GUN WAS TAKEN Per Brad Richman!" Am. Compl. at ¶ 237 (ECF No. 4) (emphasis omitted). It is not clear from the Amended Complaint who spoke to

---

[2] Undersigned counsel was recently informed that Plaintiff ultimately appealed the revocation and has a Board hearing scheduled for October 22, 2018.

Richman or when this direction was given. Finally, it is alleged that Brad Richman filed a motion to dismiss, apparently in the appeal of the first LTCF revocation. Id. at ¶ 333.

As to Ross, Plaintiff identifies him as the Police Commissioner and states, in conclusory fashion, that he "was involved in, promoted, ratified, condoned, advised in relation to, or otherwise [was] responsible for the issuance and revocation of LTCF, as well as responsible for the hiring, training and supervision" of the PPD and Gun Permit Unit. Id. at ¶ 3. Without specifying what actions Ross took in the revocations, Plaintiff seeks to hold Ross responsible for the alleged defects involved in the revocations of his LTCF. See, e.g., id. at ¶ 20, 39.

## II. ARGUMENT

The court determines whether dismissal is appropriate under Rule 8 pursuant to its own discretion. See Bolick v. NE Indus Servs. Corp., 666 F. App'x 101, 103 (3d Cir. 2017) (affirming dismissal of pro se plaintiff's § 1983 complaint for, *inter alia*, failure to comply with Rule 8(a)).

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's bald assertions" or "legal conclusions." Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007).

Although a pro se plaintiff's pleading should be construed liberally, it still must meet the Iqbal plausibility standard. Phillips v. Northampton Cnty., 687 F. App'x 129, 131 (dismissal appropriate where pro se plaintiff failed to allege defendant's personal involvement) (3d Cir. 2017) (citing Fantone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015)).

5

### A. Plaintiff's Complaint Should be Dismissed Because He Failed to Set Out a Short and Plain Statement of His Claims that Would Permit Defendants to Understand the Allegations Against Them

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). The complaint must be sufficiently clear that the court or the opposing party need not "forever sift through its pages in search of the nature of the plaintiff's claim." Bolick, 666 F. App'x at 104 (quotation marks omitted). In Bolick, the plaintiff pled "numerous disparate alleged factual predicates" involving private parties, judicial misconduct, municipal entities, and conspiracy in a 95-page complaint and 29 pages of exhibits. Id. at 102–03. The district court dismissed pursuant to Rule 8 because the defendants were left to "guess what of the many things discussed constituted a specific cause of action against them." Id. at 103 (alterations omitted). The Bolick court agreed, finding the claims were not simple, concise, and direct, because the complaint was "too voluminous and unfocused to be intelligible," "name[d] numerous parties and narrate[d] various events that [had] no apparent connection to or among each other," and was "rife with irrelevant facts." Id.

Plaintiff's Amended Complaint similarly fails to state its claims in a short and plain manner. Defendants have been left the task of culling 114 pages and interpreting what claims they should level against themselves. The 114 page-count is comparable to the complaint described in Bolick; in addition, the Amended Complaint incorporates almost an hour and half of video. Defendants are extremely burdened by the time required to review this material when it mostly contains irrelevant facts or utter legal conclusions—in both cases frequently repeated. Defendants are prejudiced by having no guidance as to what facts make up what claims against them—effectively being forced to interpret the Amended Complaint as an advocate rather than as an adversary. Accordingly, the Amended Complaint should be dismissed.

> **B.     The Court Should Dismiss Plaintiff's Statutory and Constitutional Challenges to the Revocation of His LTCF Because His Ongoing State Proceedings Warrant <u>Younger</u> Abstention[3]**

Plaintiff appears to claim that his LTCF revocations did not conform to 18 Pa. Cons. Stat. Ann. § 6109 (providing for LTCF licensing and revocation) or 2 Pa. Cons. Stat. Ann. § 752 (Local Agency Law statute providing for appeals of municipal administrative decisions) and seeks relief under these statutes. <u>See</u> Am. Compl. at ¶¶ 20–56, 243–67 (ECF No. 4) (Counts I, II, III, IV, XV, XVI, and XVII).  In addition, Plaintiff challenges the constitutionality of § 6109 or its application, on the basis of Pennsylvania's constitutional delegation of powers, (<u>Id.</u> at ¶¶ 57–66, 268–75 (Counts V & XVIII)), Pennsylvania and federal due process, (<u>Id.</u> at ¶¶ 67–103, 276–90 (Counts VI, VII, & XIX)), Pennsylvania and federal equal protection, (<u>Id.</u> at ¶¶ 104–06, 291–93 (Counts VIII & XX)), Pennsylvania and federal rights to bear arms, (<u>Id.</u> at ¶¶ 107–10, 294–97 (Counts IX & XXI)), Pennsylvania and federal rights to free speech, (<u>Id.</u> at ¶¶ 111–14, 298–301 (Counts X & XXII)), and federal Sixth Amendment rights and their Pennsylvania counterparts, (<u>Id.</u> at ¶¶ 129–56 (Counts XII, as to the first revocation only).

A federal court may abstain from jurisdiction where it would avoid unduly interfering with legitimate activities of the state. <u>Younger v. Harris</u>, 401 U.S. at 44–45 (1971). A <u>Younger</u> abstention is appropriate where (1) there is "an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings . . . implicate important state interest, and (3) the plaintiff [will be] afforded an adequate opportunity in the state proceedings to raise constitutional claims." <u>Gentlemen's Retreat, Inc. v. City of Philadelphia</u>, 109 F. Supp. 2d 374, 378 (E.D. Pa. 2000) (citing <u>Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n</u>, 457 U.S. 423 (1982)).

---

[3] Defendants acknowledge that they removed this action but note that the Complaint offered Defendants no facts prior to the removal. <u>See</u> Compl, Notice of Removal at 6–10 (ECF No. 1).

Regarding the first prong, the City's administrative appeal process is a judicial proceeding. Id. at 379 n.4 (citing Midnight Sessions, Ltd. V. City of Philadelphia, 945 F.2d 667 (3d Cir. 1991)). Moreover, the "state's trial-and-appeals process is treated as a unitary system." O'Neill v. City of Philadelphia, 32 F.3d 785, 790 (3d Cir. 1994) (internal quotation marks omitted). The federal litigant must exhaust his state appellate remedies. Id. By extension, a state proceeding is "pending" where the federal plaintiff failed to pursue state judicial review of an administrative determination. Id. (citing O'Neill, 32 F.3d at 790). In Gentlemen's Retreat, Inc., the plaintiff received a "Cease Operations Order" from a City agency but did not appeal to the Board. Id. at 376. The Court determined that, pursuant to O'Neill, plaintiff's failure to attempt to secure review by the Board satisfied the requirement that the proceeding be pending. Id. at 379.

Accordingly, the first prong required for Younger abstention is met here. Plaintiff's May 11, 2016 revocation, which reached an appeal to the Board, was not further appealed after his LTCF was returned and the Board appeal was denied as moot.[4] That is, Plaintiff did not appeal to the Court of Common Pleas pursuant to the Local Agency Law. Similarly, Plaintiff's June 20, 2017 revocation is scheduled for a Board hearing scheduled for October 23, 2018.[5] Both actions are pending pursuant to Gentleman's Retreat and O'Neill.

In assessing the second Younger abstention prong, Courts do not focus on the outcome of a particular case, but instead "look to the importance of the generic proceedings to the State." O'Neill, 32 F.3d at 792. The O'Neill Court noted the City's "vital and critical interest in the functioning of a regulatory system . . . which is intimately associated with . . . the municipal government in particular." Id. It also acknowledged the substantial interest in "enforcing criminal

---

[4] Plaintiff's claims concerning this revocation are also barred by claim preclusion and mootness.

[5] To the extent the Court does not credit this fact for motion purposes, the pleading otherwise indicates he failed to pursue Pennsylvania judicial review at all, as in Gentleman's Retreat.

8

laws that bear a close relationship to criminal proceedings." Id. Outside of the Younger context, this Court has acknowledged the City's "prevailing interest in ensuring that persons licensed to carry firearms do not present a danger to public safety." Potts v. City of Philadelphia, 224 F. Supp. 2d 919, 943 (E.D. Pa. 2002).

The second prong required for Younger abstention is therefore likewise met. Federal litigation of these claims, particularly given Plaintiff's challenges of the revocation on grounds that include the regulatory statutes themselves, would essentially usurp the City's regulatory ability by supplanting its regulatory process and its internal and statutory appellate mechanism.

The third prong is also clearly established since, "under Pennsylvania law, a plaintiff may raise constitutional claims during the judicial review of an administrative decision." Gentleman's Retreat, 109 F. Supp. at 380; see 2 Pa. Cons. Stat. Ann. § 753. Constitutional challenges are accordingly clearly available to Plaintiff under the pending state proceedings.

Given the strong state interest in resolving Plaintiff's challenges to his revocations through the regulatory and appellate mechanisms designed for specifically that purpose, and given Plaintiff's ability to raise constitutional challenges therein, abstention is appropriate here.

### C. The Court Should Dismiss Claims Against the Philadelphia Police Department, the Gun Permit Unit, and the Board of Licenses and Inspections Because They Are Not Legal Persons Subject to Suit

Departments of the City of Philadelphia do not have a separate corporate existence and are not properly named as parties to a suit. 53 Pa. Stat. § 16527. As a matter of law, and pursuant to § 16527, the PPD is not a legal entity that can be sued, and dismissal of the PPD as a defendant is appropriate. Regalbuto v. City of Philadelphia, 937 F. Supp. 374, 377 (E.D. Pa. 1995) (citing Philadelphia v. Glim, 149 Pa. Commw. 491, 613 A.2d 613 (1992)). Because Plaintiff here has attempted to bring suit against the PPD, its dismissal is appropriate. The Gun Permit Unit, as a unit within the PPD, should also be dismissed. Similarly, the Board of Licenses

and Inspections is a body within Philadelphia's Department of Licenses and Inspections, and therefore should also be dismissed as a Defendant.

> **D.      Plaintiff's Claims Against the City Fail Because Plaintiff Did Not Plead Facts Plausibly Establishing the Elements of a <u>Monell</u> Claim**

A municipality cannot be held liable under § 1983 for its employees' constitutional torts by way of respondeat superior. <u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). Rather, under <u>Monell</u>, a municipality may be liable in one of three ways. <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 694). First, the municipality may be liable if the employee acted pursuant to a government policy or custom. <u>Monell</u>, 436 U.S. at 694. Second, the municipality may be liable if the employee had policy-making authority. <u>McGreevy</u>, 413 F.3d at 367. Third, the municipality may be liable if an official with authority ratified the unconstitutional actions of the subordinate employee. <u>Id.</u>

In <u>Wood v. Williams</u>, the United States Court of Appeals for the Third Circuit affirmed the dismissal of a <u>Monell</u> claim. 568 F. App'x 100, 102 (3d Cir. 2014). The plaintiff in <u>Wood</u> set forth a series of conclusory allegations that "simply paraphrase[d]" the elements of <u>Monell</u> liability. <u>Id.</u> at 103–04. The Court held that such "conclusory and general" averments were "insufficient" and "fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." <u>Id.</u> at 104 (citations and quotation marks omitted). Averments that "amount to a mere recitation of the . . . elements required to bring forth a <u>Monell</u> claim . . . are insufficient to survive a motion to dismiss." <u>Butler v. City of Philadelphia</u>, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). In <u>Torres v. City of Allentown</u>, the court found dismissal appropriate where the plaintiff's complaint "lack[ed] any specific allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008);

see also Young v. City of Chester, 17-3066, 2018 WL 1583674 (E.D. Pa. April 2, 2018) (conclusory policy allegations involving, *inter alia*, "legal cause to stop," warranted dismissal of Monell claims).

At best, Plaintiff attempted to impute liability to the City through the first prong of Monell. That is, even assuming he sufficiently alleged that Ross had policy-making authority relevant to the alleged violations, he did not allege Ross was personally involved in the underlying conduct, or that he ratified actions of a subordinate. Even under the first prong, however, Plaintiff's conclusory allegations fall short of establishing a plausible Monell claim.

Plaintiff's allegations here were clearly insufficient pursuant to Wood, Butler, Torres, and Young. It is clear here that Plaintiff complains about two police stops and the resulting revocations of his LTCF. He does not attempt, even in conclusory fashion, to establish a specific policy or custom that caused the allegedly unconstitutional conduct. Accordingly, the City should be dismissed.

### E. Plaintiff Failed to Allege a Specific Supervisory Practice or Procedure Defendant Ross Failed to Employ to Establish his Supervisory Liability.

Liability for a civil rights claim cannot be imputed vicariously. Evancho v. Fisher, 425 F.3d 347, 353 (3d Cir. 2005). Instead, an individual defendant must have personal involvement in the alleged constitutional violation. Id. (dismissal of Attorney General appropriate where complaint merely hypothesizes Attorney General's involvement in alleged violations based on his position). Supervisory liability can be imposed on a defendant where the plaintiff

> (1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

11

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001); see also McGee v. Thomas, 16-5501, 2018 WL 347578 (E.D. Pa. Jan. 10, 2018) (dismissal of supervisory liability claims appropriate where supervising practice is unidentified and supervisors' liability stated in only conclusory terms). It is insufficient to simply argue the alleged constitutional violation would not have occurred if the supervisor had done more. Brown, 269 F.3d at 216. Instead, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference." Id.

Plaintiff failed to allege any facts to support an inference that Ross had any direct involvement for the isolated stops of Plaintiff by police officers. Similarly, even liberally construing Plaintiff's allegations, they did not permit an inference that any of the elements of supervisory liability could be satisfied. Primarily, Plaintiff failed to allege an absent supervisory practice or policy that might have prevented the alleged constitutional violations. As such, Plaintiff of course did not plead any "specific acts or omissions" evidencing Ross's deliberate indifference to the unpled risks created by the unpled absent policies and procedures. It is clear instead that Plaintiff relies solely on Ross's position of authority to establish supervisory liability. Pursuant to Evancho, dismissal of Ross is therefore appropriate.

### F. Plaintiff Has Not Stated a Claim for Unreasonable Search and Seizure Resulting from the Two Stops and Has Not Identified Personal Involvement of Any of the Defendants

Plaintiff appears to allege that he was unreasonably seized and searched during the stops on May 2, 2016 and June 16, 2017. See Am. Compl. at ¶¶ 115–28, 302–19 (Counts XI & XXII). "Pennsylvania courts have routinely held an officer's observance of an individual's possession of a firearm in a public place in Philadelphia is sufficient to create reasonable suspicion to detain that individual for further investigation." U.S. v. Cooper, 293 F. App'x 117, 119 (3d Cir. 2008) (upholding denial of federal criminal motion to suppress and acknowledging the relevance of

Philadelphia's licensing requirements for its reasonable suspicion and probable cause analyses). Here Plaintiff was clearly on the public streets with a firearm—with the intent, as evidenced by his videos, of being challenged by police officers. The officers had reasonable suspicion to investigate Plaintiff's licensing status. Moreover, when Plaintiff failed to identify himself, they could neither ascertain his LTCF status nor ensure their own safety without searching him.

Moreover, a threshold requirement of a § 1983 claim requires a Plaintiff demonstrate a defendant's personal involvement in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff has not identified the involved officers as defendants, nor has he identified that Ross or Richman, the two individual defendants he has named, were personally involved in his stop or search. Accordingly, this claim should be dismissed.

### G. To the Extent the Court Construes Plaintiff as Having Raised a Malicious Prosecution Claim, He Has Not Alleged Personal Involvement of Any of the Defendants

Similarly, Plaintiff has arguably attempted to state a malicious prosecution claim. See Am. Compl. at ¶¶ 163–242 (Count XIV).[6] Plaintiff complains of the officers' conduct and the resulting Philadelphia Code Violation Notice for disorderly conduct. Nonetheless, Plaintiff has not identified that any of the Defendants were personally involved in the decision to cite Plaintiff for disorderly conduct. Pursuant to Rode, this is fatal to any attempt by Plaintiff to state a claim for malicious prosecution.

### H. Because the Court Should Dismiss the Other Claims, The Court Cannot or Should Not Retain Jurisdiction over Plaintiff's Settlement Agreement Claims

Generally, a federal district court does not have jurisdiction to enforce a settlement agreement. Rabb v. City of Ocean City, 833 F.3d 286, 294 (3d Cir. 2016) (quoting Kokkonen v.

---

[6] Defendants do not address Plaintiff's reference to the criminal statute of harassment, which cannot form the basis of his civil complaint.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 380–81 (1994)). The proper forum to enforce the settlement agreement is the state court unless there is an independent basis for federal jurisdiction. Nelson v. Pennsylvania, 125 F. App'x 380, 382 (3d Cir. 2005). Here, Plaintiff attempts to raise claims arising from a settlement agreement reached in the Philadelphia Court of Common Pleas. Am. Compl. at ¶¶ 157–62 (Count XIII). To the extent the Court dismisses the remaining claims, it must dismiss any claims seeking to enforce the settlement agreement in favor of state court jurisdiction.

### III. CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiff's claims against Defendants with prejudice.

Date:  October 22, 2018

Respectfully submitted,

 /s/ Andrew F. Pomager
Andrew F. Pomager
Assistant City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov