# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**James W. Moody**

**: Vs. :**

**THE CITY OF PHILADELPHIA, et al.**

**CIVIL ACTION**

**No. 2:18-cv-02413**



FILED

DEC 3 1 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk

## Revision Response to Defendants' Motion

### JURISDICTION AND VENUE

1. This is an action for all legal and lawful relief and damages pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the 1st, 2nd, 4th, 5th, 6th, 13th, and 14th, Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202 as this Court has the jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper (in the pursuit of justice and equality as in "Justice for All").Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

2. Venue is proper in the Eastern District in that the events and conduct complained of herein all occurred in the Eastern District.

### PRELIMINARY STATEMENT

3.One may readily and vehemently disagree yet the chief among our greatest evils and the worst of our crimes is man's inhumanity toward man. His indifference and inability to see and feel the connection and the thread that links and binds us all. That we are one,··· have been and shall forever be One, of many tribes, but of only one flesh and one people , it is the lack of

this truth , this lack of knowledge that manifests itself in man that gives him the capacity to cause great evil, harm and injustice to others he, might otherwise call Brother and treat him as such··· Please ponder these events and lend power to the notion and creed and let it burn as a torch upon these shores.. "And Justice For All" . For in this City injustice prevails as

**THE CITY OF PHILADELPHIA AND ITS' AGENTS AND VARIOUS AGENCIES HAS MALICOUSLY CONSPIRED AND THROUGH SYSTEMATIC MALFEASANCE AND DERELICTION AND ABUSE OF CIVIL DUTIES AND POWERS, HAS SUBJECTED James W. Moody TO A MULTITUDE OF CIVIL VIOLATIONS. AMONG AND INCLUDING HIS 1ST, 2ND, 4TH, 5TH, 6TH, 13TH, AND 14TH AMENDMENT RIGHTS, AND THREATENED HIS WELFARE AND SAFETY ALSO IN EFFECT ABROGATING THEM IN A MANNER THAT HAS SUBJECTED HIM TO A CONDITION OF SLAVERY I.E. RESTRCTED FREEDOM.**

In support thereof, Mr. James W. Moody respectfully avers the following:

**PARTIES**

4. Plaintiff, James W. Moody (hereinafter "Mr. Moody") was, at all relevant times, an adult resident over the age of twenty-one (21) and a Citizen and resident of Philadelphia, Philadelphia County, Pennsylvania.

5. Defendant(s) City of Philadelphia (hereinafter "the City") was, at all relevant times, responsible for the appointment of Richard Ross Jr. to the office of Police Commissioner are responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The PPD is also responsible for preventive, investigative, and enforcement services for all citizens

of the City of Philadelphia. All of its' employees, agents and officials in this complaint were at all relevant times operating and/or acting under the color of law.

6. Defendant, Police Commissioner Richard Ross Jr. (hereinafter "Commissioner Ross") was, at all relevant times, an adult individual, whom is the Police Commissioner of the Philadelphia Police Department and is thereby employed by, an agent of and vested decision making power for the Philadelphia Police Department by the City of Philadelphia, who was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance and revocation of LTCF, as well as responsible for the hiring, training , direction and control and supervision of the Philadelphia Police Department and the Gun Permit Unit of the Philadelphia Police Department. In addition Ross is charged with oversight and implementation of all policies, procedure, and/or guidelines of the P.P.D. The Chief of Police is also charged with issuing and revoking LTCF in cities of the first class pursuant to 18 Pa.C.S.A. § 6109.  Defendant is and/or was at all times acting under color of law in the scope and course of his duties as a police Commissioner of the Philadelphia Police Department. He is being sued in his individual and official capacity as an employee of the City of Philadelphia.

7. Defendant, the Philadelphia Police Department Gun Permit Unit (hereinafter "GPU") was, at all relevant times, a unit of the Philadelphia Police Department and, as such, was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance and revocation of LTCF The Philadelphia Police Department (hereinafter "PPD") is a local agency pursuant to 42 Pa.C.S.A. § 933 and is charged issuing Licenses to Conceal Carry Firearms pursuant to 18 Pa.C.S.A. § 6109.

8. Defendant, Philadelphia Police Department was, at all relevant

times, an agency of the City of Philadelphia and, as such, was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance and revocation of LTCF The Philadelphia Police Department (hereinafter "PPD") is a local agency pursuant to 42 Pa.C.S.A. § 933 and is charged issuing Licenses to Conceal Carry Firearms pursuant to 18 Pa.C.S.A. § 6109.

9. Defendant, Board of Licenses and Inspections was, at all relevant times, an agency of the City of Philadelphia and, as such, was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance, revocation, and hearings of LTCF. The Board of Licenses and Inspections (hereinafter "L&I"/ "Board") is a local agency pursuant to 42 Pa.C.S.A. § 933 and is charged issuing Licenses to Conceal Carry Firearms pursuant to 18 Pa.C.S.A. § 6109.

10. Defendant, Bradford A. Richmond (hereinafter " Mr. Richman") was, at all relevant times, an adult individual, whom is an attorney of the City of Philadelphia and is thereby employed by, an agent of and vested decision making power for the City of Philadelphia, who was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance and revocation of LTCF, as well as responsible for supervision of the Philadelphia Police Department and the Gun Permit Unit of the Philadelphia Police Department regarding the circumstances involving Mr. James W. Moody. He is charged with issuing and revoking LTCF. (???pursuant to 18 Pa.C.S.A. § 6109. ???)

11. Officer Cave badge #4068

12. Officer Deeks Badge #2860

13. Officer Deeks partner (unknown) Refused multiple requests to identify.

14. Sargent Chevellin (sp.) badge #356

15. Unidentified Female Officer

16. Officer "I'll show you how to fukin' take it"

17. G.P.U. Ofc. Green

18. G.P.U. Lt. King

19. G.P.U.Email Correspondents pertaining to revocation

20. Brd. L&I  panelist1- 1st & 2nd revocation hearing.

21. Brd. L&I  panelist2- 1st & 2nd revocation hearing.

22. Brd. L&I  panelist3- 1st & 2nd revocation hearing.

23. Brd. L&I  panelist4- 1st & 2nd revocation hearing.

24. Ofc. Ramirez

25. Ofc. "Heavy"

26. Sgt. Ryan

27. Lt. Dandridge

28. Various other unknown officers and  agent of the City in this matter.


**FACTS**

29.   Mr. Moody was issued a LTCF (#51-00036776) by the GPU on February 29, 2016, pursuant to 18 Pa.C.S.A. § 6109.

30.   On May 11, 2016, Mr. Moody's LTCF was revoked by Commissioner Ross and the GPU. *See* Revocation Notice, attached hereto and incorporated herein as Exhibit A.

31.   The stated reason of the revocation was: "9999- Good Cause." *Id.* (...And has not been predicated upon Any said Laws or Ordinances.)

32.   The revocation stated in the additional information field "failure to produce  LTCF & placed officers and community in danger". (Has failed to produce a victim(s), injured party (ies), or any evidence thereof, also both his property and liberty were taken without consent when Officer Cave and his colleagues handcuffed and took Plaintiff's wallet and firearm by force while acting under the color of state law.

33.   The actual basis for the revocation is unknown, as the Notice of Revocation only states the legal basis and some nebulous additional information but fails to provide any specific, articulable factual basis, pursuant to Section 6109(e)(1), for the revocation and is in violation of the Commonwealth Court's holding in Caba v. Weaknecht, 64 A.3d 39 (Pa. Cmwlth. 2013). *Id.*

34.   Pursuant to Section 6109(i), an LTCF may *only* be revoked by the issuing authority for a reason set-forth in Section 6109(e)(1) "which occurs during the term of the permit."

35. As the permit was issued on February 29, 2016, only a reason set-forth in Section 6109(e)(1) that occurred since February 29, 2016 can be the basis for revocation

36.   Even if Commissioner Ross or the GPU were permitted to

consider issues prior to February 29, 2016, Mr. Moody has never been charged or convicted of any misdemeanor or felony charge. (Furthermore, Mr. Moody holds both State and Federal Security Clearances.)

37 . There exists no basis, and Commissioner Ross and the GPU have failed to provide any basis, that Mr. Moody's conduct amounted to "good cause." **UNDER 18 PA.C.S. §§ 6109, 6114 AND 2 PA.C.S. § 752** was and is a **FAILURE TO PROVIDE A VALID BASIS FOR REVOCATION.**

38.    Pursuant to 18 PA.C.S. § 6109, an issuing authority can only revoke a LTCF for "good cause."

39. The Notice of Revocation, provides no good cause for revocation of Mr. Moody's LTCF, as it fails to provide any meaningful or articulable explanation for the underlying basis for the revocation and similar language, used by Berks County Sheriff Weaknecht, was found to be insufficient by the Commonwealth Court in Caba, 64 A.3d 39 (Pa. Cmwlth. 2013). *See* Exhibit A.

40. As the burden of establishing "good cause" rests with the issuing authority, no good cause has been or can be established.

41.    "No adjudication of a local agency shall be valid as to any party unless he shall  have been afforded reasonable notice of a hearing and an opportunity to be  heard." 2 Pa.C.S. § 553.

42.    "Local Agency" is defined as "a government agency other than a Commonwealth  agency." 2 Pa.C.S. § 101.

43.    A "government agency" is defined as "[a]ny Commonwealth agency or any  political subdivision or municipal or other local authority, or any officer or  agency of any such political subdivision or local authority." *Id.*

44.  The term "adjudication" is defined as "[a]ny final order, decree, decision,  determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities, or obligations of any or all of the parties to the proceeding in which the adjudication is made." *Id*.

45.  The Philadelphia Police Department is a Local Agency. 42 Pa.C.S. § 933

46.  The hearing required under 2 Pa.C.S. § 553 must, at a minimum, be  stenographically recorded. 2 Pa.C.S. § 553.

47.  The local agency must allow examination and cross-examination of witnesses at the hearing. 2 Pa.C.S. § 554.

48.  The Board is a Local Agency. 42 Pa.C.S. § 933; *City of Phila. v. Phila . Bd . of License*, 669 A.2d 460, 462 (Pa. Cmwlth. Ct. 1995).

49.  Adjudications made pursuant to the Local Agency Law must be in writing and accompanied with findings of fact and reasons for the adjudication. 2 Pa.C.S. § 555.

50.  Mr. Moody has a property, liberty, and safety interest in his LTCF. Caba, 64 A.3d at 63.

51.  The Board's affirmation of the revocation of Mr. Moody's LTCF constituted an adjudication, as it affected his property, liberty, and safety right in his LTCF in the most serious manner: it fully deprived him of it.

52.  No findings of fact or specific reasons were given for the affirmation of the revocation of Mr. Moody's LTCF. *See* Notice of Decision, attached hereto and incorporated herein as Exhibit

B.

53. Moreover, as of yet no findings of fact or specific reasons were provided to Mr. Moody prior to the revocation of his LTCF or after the affirmation of the revocation.

54. Therefore, the Board's affirmation of the revocation violated the Local Agency Law.

55. Article II, Section 1 of the Pennsylvania Constitution provides that – "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

56. Section 6109(e)(1)(i) provides that an issuing authority may revoke a LTCF "for good cause." [1]

57. The General Assembly has not defined what the phrase "good cause" means.

58. Further, there are no regulations or primary standards establishing what constitutes "good cause."

59. Rather, the determination of what constitutes "good cause" is left to the issuing authority, in violation of Article II, Section 1.

60. In finding that Section 306(a.2) of the Workers Compensation Act was an unconstitutional delegation of authority under Article II, Section 1, the Commonwealth Court reaffirmed that Article II, Section 1 "vests legislative power in our General Assembly, "embod[ying] the fundamental concept that only the General Assembly may make laws, and cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.), 124 A.3d 406, 412, 415 (Pa. Cmwlth. Ct. 2015)(*quoting* Association of

Settlement

[1] To the extent this Court determines the phrase "good cause" to mean "character and reputation", even though a separate box was specified for character and reputation and left unchecked, then these claims are identically made in relation to character and reputation.

Companies v. Department of Banking, 977 A.2d 1257, 1265 (Pa. Cmwlth. 2009)

(en banc)).

64. The Commonwealth Court further found Section 306(a.2) unconstitutional under  Article II, Section 1, due to the lack of regulations and any standards.

65. Furthermore, as recently stated by the Pennsylvania Supreme Court in finding that  Section 696(i)(3) of the School Code as being unconstitutional under Article II, Section 1, the purpose of the non-delegation provision of Article II, Section 1, is "to ensure the Pennsylvania Legislature makes basic policy choices, and to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power" and where such delegation is constitutional "the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed." W. Phila. Achievement Charter Elem. Sch. v. Sch. Dist. of Phila., 132 A.3d 957, 966 (Pa. 2016)

66. As there exists no definition or standards of what constitutes "good cause," Section 6109(e)(1)(i) violates delegation of authority.

67. Commissioner Ross' revocation and that same revocation as carried out the G.P.U. are all and both subject to the aforementioned facts and citings.

## FIRST CAUSE OF ACTION
**Right to Be Secure From Unreasonable Seizures**
**42 U.S.C. §1983 - Fourth Amendment; Art. 1, § 8,**
**Pennsylvania Constitution**

68.   The foregoing paragraphs are incorporated herein as if set forth in full.

69.   Mr. Moody's inalienable indefeasible right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated... as protected by the Fourth Amendment to the United States Constitution, and adjudicated  pursuant to the United States Supreme Court decision in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)

70.   Whereupon, May 2, 2016 Mr. Moody was traveling towards his destination, he was intercepted by Officer Cave, who walked across the street holding a cup of coffee.

70. At the post-deprivation hearing Officer Cave, the responding officer, testified that the sole reason he stopped Mr. Moody was because he was carrying a firearm. *See* Hearing Transcript, attached hereto and incorporated herein as Exhibit C at 19.

71. Officer Cave testified that Mr. Moody had not committed any crime. *Id.* at 24. He further stated that he did not suspect the Plaint of having committed a crime.

72. However, the officer called for additional officers to aid him in his stop, once Mr. Moody informed him that this is not a Stop and Identify state.

73. Five additional officers, six including Officer Cave forced compliance to their will while acting under the color of law and in accordance with police policy. Not one of the officers had acumen or wherewithal to follow the court order, docket No. 121203785, with placed their actions in direct violation to said order regarding these matters.

74. In disregard, thereby detaining and made a custodial or defacto arrest of Mr. Moody and searched his person and seized his personal artifacts and property while handcuffed and under threat of violence.

75. Moreover, neither of the officers read him his rights during the search and seizure while in their custody.

76. Throughout the encounter the Plaintiff informed the officer's that he was aware of the laws and statutes that governed that municipality and that they had failed to articulate any violation there of, and that his activity was not unlawful and that he was exercising he 2nd Amendment. " Use it or lose it", he exclaimed!!!

77. "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." *Miranda v. Arizona*, 384 US 436 (1966).

78. "The claim and exercise of a constitutional Right cannot be converted into a crime." *Miller vs. U.S.*, 230 F. 486, 489 (1956).

80. "For a crime to exist there must be an injured party (Corpus Delicti) There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." *Snerer vs. Cullen*, 481 F. 946. (9th Cir. 1973)

81. Plaintiff violated no laws, nor was he charged with any violation thereof before or after he was handcuffed and held against his will and without his consent as officers seized and went through his personal belonging.

82. Thereupon, ascertaining his identity as well as verification of the Plaintiff's assertions that he was engaged in the lawful exercising of his constitutional rights.

83. NO One, is above the Law! The officers had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendments, and a duty not to deprive or trample constitutional rights or make threats against the use thereof… They also Had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785.

84. Moreover, there was one officer in the group that constantly threatened Plaintiff with the revocation of his LTCF during this encounter and none of the other officers made any effort to deter or cease the threats made directly to Plaintiff.

85. Accordingly, Defendants Cave and assisting officers are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff bring this claim for injuries, emotional distress, property, safety, and enjoyment of life

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount to be determined by this Court to be just, fair and reasonable;
2. punitive damages;

3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and

appropriate.

6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

## SECOND CAUSE OF ACTION
**Right to Be Secure From Unreasonable Seizures**
**42 U.S.C. §1983 - Fourth Amendment; Art. 1, § 8,**
**Pennsylvania Constitution**

86. The foregoing paragraphs are incorporated herein as if set forth in full.

87. (By) letter June 5, 2017 Plaintiff was notified that the Philadelphia Police Department was reinstating his License to Carry Firearm (LTCF).

88. The following week, Plaintiff went to the Police Gun Permits Unit and picked up his License to Carry Firearms which had been reinstated and valid as acknowledged by the by City's counsel, Bradford A. Richman.

87. This however, was a result of a successful attempt to render a "Moot dismissal" in Mr. Moody's at that time pending case against some of the Defendants in this case, since he had already flat out refused the city's proposal abdicating his birthright in a settlement drafted by his former and City attorneys and his willingness to stand for and maintain our inalienable indefeasible rights

88. On June 16, 2017, several days after picking up his valid LTCF the Plaintiff, while out jogging was accosted by Police and immediately "locked up!"

89. Whereupon Mr. Moody was traveling (Jogging with his sport cam , as he is in the habit of filming for his internet channel) towards his destination, he was intercepted by two police officer's who cut in front of him in their squad car as he was attempting to cross the street.

90. Both officers knew Mr. Moody, one from the aforementioned stop of 2016 which resulted in the City returning Mr. Moody's LTCF without any apologies for it's abuse of his rights, time, legal fees, or the great deal of trauma and threats imbued on their behalf. The other Officer Ramirez knew him from the orders that he received to arrest Mr. Moody on sight, as he stated on video.

91. In review of the evidence provided by Mr. Moody the sole reason they stopped Mr. Moody was for kicks, and that one officer knew how much the other dug that type of thing according to their remarks.

92. Not because he was carrying a firearm, but because that's how they got their kicks (Screwing with people). They went on to remark how it was so boring down at the hospital (where people Need Help).

93. Mr. Moody had not committed any crime. However, the officers called for additional officers to aid in the roasting and ridicule of Mr. Moody. Who was apparently known by all or most present. All of the Commanding officers knew him personally from the 2016 incident.

94. Lt. Dandridge informed Him as long as he had the money and the time to do what he (Mr. Moody) was doing (exercising his constitutional rights), he would continue to get the same treatment, as Mr. Moody stood before him in handcuffs.

95. Moreover, neither of the officers read him his rights during the

unconstitutional search and seizure. Nor, did any of the officers Including Sgt. Ryan or Lt. Dandridge once consider following the court ordered ruling from docket No. 121203785.

96. Which specifically states in item 10) LTCF Application Notice

*The City will not require LTCF applicants or holders to disclose to law enforcement that they have an LTCF, that they are carrying a firearm or that they have a firearm in the vehicle; and*

*The City will not confiscate an LTCF or firearm, unless there is probable cause that the LTCF or firearm is evidence of a crime. In the event an LTCF or firearm is confiscated, the officer must immediately provide a property receipt, which shall include the pertinent information*

97. Additionally Mr. Moody was falsely imprisoned pursuant 25 CFR 11.404 in the police " Sweat Box" for nearly an hour while they mocked and ridiculed him to the public and among themselves as they conspired to trump up false charges against him as depicted in the internet links in this Complaint.

A. https://youtu.be/mFhQXPGkBLk

B. https://youtu.be/ov6iQxyUpjM

98. The officers are heard on the recording after receiving conformation the Plaintiff did in fact have a valid LTCF and the once more his actions were indeed legal and lawful as confirmed by Lt. King.

99. However, officer Ramirez informs the others that both Sgt. Ryan and Lt. Dandridge said "Fuck it" take it again also stating that Ryan took it before as depicted in recording.

100. Moreover, another officer states that it's still in good status (LTCF) "We'll sit down and I'll show you show to fuckin' take it

..."

101. Ramirez goes on to question, "Disorderly conduct for what?!?, and officer "Heavy" tells him what to write, he goes on to remark that the gun was taken per Brad Richman…. Just before the recording ends, officer "Heavy" states, "It will get thrown out anyway!"

*Without having identified himself in Any manner and exercising his aforementioned Rights/Power/Freedoms all well within the well established confines of the Law OF The LAND, and the state of Pennsylvania Mr. Moody was released without apology or arrest. However, his firearm was indeed stolen, or at the VERY LEAST seized by the PPD as part of it's campaign of Malicious Prosecution towards Mr. Moody under the color of law in violation of court order 121203785.*

102. Once more, NO One, is above the Law! The officers as well as Mr. Richman had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendments, and a duty not to deprive or trample constitutional rights or punish (holding in the "sweat box" for nearly an hour) the use thereof… They also Had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785.

103. Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff bring this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount to be determined by this Court to be just, fair and reasonable;
2. punitive damages;

3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

## THIRD CAUSE OF ACTION

## STATE AND FEDERAL RIGHT TO DUE PROCESS

## 42 U.S.C. §1983 - Fourteenth Amendment; Art. 1, § 1, 9 and 11 of the Pennsylvania Constitution

103. The foregoing paragraphs are incorporated herein as if set forth in full.

104. Mr. Moody's right to Due Process, as protected by the Fourteenth Amendment of the United States Constitution and Article I, Sections 1, 9, and 11 of the Pennsylvania Constitution, however, he was never afforded an opportunity to be heard, to cross-examine witnesses, present witnesses, or have a neutral arbiter, as provided for by 2 PA.C.S. §§ 551-555; hence, requiring Mr. Moody to pay court costs and legal fees to determine the underlying basis of the revocation.

105. When the government deprives an individual of a property or liberty interest, it must grant the individual due process prior to the deprivation. Davenport v Reed, 785 A.2d 1058, 1062 (Pa. Cmwlth. 2001).

106. An individual has both a property and liberty right in a LTCF. Caba, 64 A.3d at 63.

107. In order to satisfy the process that is due, the government must provide the individual with notice and an opportunity to

be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976); In re McGlynn, 974 A.2d 525, 531-32 (Pa. Cmwlth. 2009).

108. A valid LTCF revocation notice must include specific reasons for the revocation. Caba, 64 A.3d at 64.

108. Merely stating the legal authority on which the revocation is founded does not constitute sufficient notice. *Id.*, at 64-5.

109. In some instances, a post-deprivation hearing may sufficiently substitute for a pre-deprivation hearing, if exigent circumstances require it. *Id.*, at 67.

110. Mr. Moody received the Notice of Revocation shortly after May 11, 2016, that his LTCF had been revoked.

111. No specific reasons were given for the basis of Mr. Moody's revocation, as the hand delivered revocation letter merely stated the legal authority for revocation.

112. This letter was hand delivered by officer Cave and a contingent of other officers, in an apparent show of force as the LTCF law states that the revocation letter is to be mailed.

113. Mr. Moody was not afforded a pre-deprivation hearing concerning the revocation of his LTCF.

114. No exigent circumstances existed to justify the lack of a pre-deprivation hearing, as Mr. Moody had not even been charged with a crime at the time the LTCF was revoked by Commissioner Ross, the GPU, or the PPD.

115. Because no pre-deprivation hearing was granted to Mr. Moody, the notice afforded Mr. Moody was insufficient, and Mr. Moody enjoyed a property, liberty, and safety interest in his LTCF,

Commissioner Ross and the GPU's revocation has not allowed Mr. Moody access to (his) due process rights .

116.  Even if, *arguendo*, this Court were to find that some exigent circumstances did exist, the Board failed to provide a prompt post-deprivation hearing.

117. The post deprivation hearing was held on November 8, 2016, 181 days after the notice of revocation was issued.

118. Because no pre-deprivation hearing was granted to Mr. Moody, the notice afforded Mr. Moody was insufficient, and Mr. Moody enjoyed a property, liberty, and safety interest in his LTCF, Commissioner Ross and the GPU's revocation denied Mr. Moody's  access to due process rights and, as such, is invalid.

119.  At the post-deprivation hearing Officer Cave, the responding officer, testified that the sole reason he stopped Mr. Moody was because he was carrying a firearm. *See* Hearing Transcript, attached hereto and incorporated herein as Exhibit C at 19.

120. Officer Cave testified that Mr. Moody had not committed any crime. *Id*. at 24

121. Moreover, Officer Cave testified that he became aware Mr. Moody had a LTCF prior to the non-consensual interaction terminating, as one of his fellow officers  found Mr. Moody's LTCF in his front right pocket and he had just been informed over the radio Mr. Moody had a LTCF. *Id*. at 27. ( As The Plaintiff stood handcuffed and surrounded by officers under armed threat of grave harm, in the cold, wet with perspiration from the jogging activity he was engaged in prior to being stopped, while also exercising his 2nd amendment right.)

122. Officer Cave further testified that because Mr. Moody had a license to carry  firearms, he was lawfully open carrying in the

City. *Id.* at 28.

123. Officer Cave also testified that Mr. Moody's lawful activity was not a threat to the community. *Id.* at 29-30.

124. Further, at the post-deprivation hearing, the City was unable to produce a witness who had any knowledge regarding the basis of the revocation of Mr. Moody's license.

125. The City was able to produce Officer Green of the GPU who testified that the police report was reviewed and several emails and phone calls were exchanged in order to determine they should revoke the license, but provided no factual basis for the decision and had no personal knowledge as to how it was reached. *Id.* at 37.

126. Moreover, at the post-deprivation hearing, the Plaintiff admitted multiple pieces of evidence including statutes (18 Pa.C.S. § 6109, 18 Pa.C.S. § 6122, and 18 Pa.C.S. § 6108), case law (Commonwealth v. Hawkins and Caba v. Wechknect),

---

95.
and a copy of the video of the incident which lead to the revocation of the Plaintiff's LTCF, which the Board failed to review and consider prior to issuing its decision. *See* Exhibit C at 21-22, 39-40.

127. Additionally, during the hearing, Board Member Rachel Gallegos utilized her cell phone at various points during the Plaintiff's testimony rather than affording the Plaintiff an opportunity to be heard, yet cast a vote to affirm the revocation of Mr. Moody's LTCF. *Id.* at 75.

128. No station, no post, nor position in the government or nation, NO One, is above the Law! The officers, the City, agents and agencies, the GPU, the PPD, the Commissioner, the broad and all

of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendment, and a duty not to deprive or trample constitutional rights or punish the use thereof... They also Had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty, yet that tree lays barren.

129.   Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

## FOURTH CAUSE OF ACTION

## STATE AND FEDERAL RIGHT TO DUE PROCESS

## 42 U.S.C. §1983 - Fourteenth Amendment; Art. 1, § 1, 9 and 11 of the Pennsylvania Constitution

130. The foregoing paragraphs are incorporated herein as if set forth in full.

131. At Plaintiff's subsequent hearing  he was met the same indifferent vitriol for his lawful use and exercise of his 1st and 2nd amendment right.

132. Was denied the right to bring forth a witness, however,  when the witness remarked on the 6th amendment right to have a witness the officer pulled the Plaintiff to the side and told him that the hearing was private and that there would have to be a special permission granted to do so, furthermore, both the witness and the Plaintiff would be separated and would not be allowed to testify in the presence of one another.

133. In truth this is a rather unique interpretation of the 6th Amendment of the U.S. Constitution and Art. 1 § 1,9, and 11

134. During His Testimony Mr. Moody was Constantly harassed and Interrupted as he attempted to read the tenets of the court ordered ruling from docket No. 121203785.

135. Defendant Brad Richman, in an outburst during (Moody's) testimony states that the ruling did not apply to the Plaintiff, and made a statement, that added language to the law according to Mr. Moody as the statement was found not to be in the court order, nor did it make any such implications in accordance with Richman's outburst.

136. The Request for the Court transcript had been made weeks ago and as of yet, still have not been sent. However, when they were requested by Plaintiff for his former attorney they were sent nearly immediately.

137. Defendants offered no proof or evidence, nor was there any requirement of any as a basis for their decision regarding the revocation.

138. There were NO, witnesses, no victim's, nor complainants rendered forth against Mr. Moody.

139. "For a crime to exist there must be an injured party (Corpus Delicti) There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." *Snerer vs.*

*Cullen*, 481 F. 946. (9th Cir. 1973)

140. The Defendants while acting under the color of law have imposed sanctions against Plaintiff in a most sinister way for exercising what are supposed to be inalienable, indefeasible rights, freedoms, and powers and has left him without, these fundamental prerequisites of this society which they have all pledged to protect and uphold, and they are accountable to the People whom they serve.

141. They are accountable for the power that is imbued in them is of the Peolple.

142. James W. Moody is One, of We the People

143. No station, no post, nor position in the government or nation, NO One, is above the Law! The officers, the City, agents and agencies, the GPU, the PPD, the Commissioner, the broad and all of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendments, and a duty not to deprive or trample constitutional rights or punish the use thereof... They also Had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty.

144. Without granting Plaintiff the basic elements of a common hearing, the Board voted to confirm the Revocation. In spite of the aforementioned, and in spite of the fact that its' previous ill conceived ruling was rendered null and void when the city was pressured into returning the LTCF in order to avoid a common Pleas court ruling on the matter.

145. Thereby allowing a dismissal of the case as a moot matter.

146. Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

## FIFTH CAUSE OF ACTION - STATE AND FEDERAL RIGHT TO KEEP AND BEAR ARMS 42 U.S.C. §1983 – Second Amendment; Art. 1, § 21 of the Pennsylvania Constitution (2 COUNTS)

147. The foregoing paragraphs are incorporated herein as if set forth in full.

148. Mr. Moody has an inalienable right to keep and bear arms, as protected by the Second Amendment to the United States Constitution, any infringement thereof is unconstitutional pursuant to the United States Supreme Court decisions in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago,

561 U.S. ___, 130 S.Ct. 3020 (2010), by requiring that he obtain a license to carry firearms for purposes of carrying a loaded firearm in his car or concealed about his person or otherwise limit, in any fashion, his ability to protect himself and his family through the use of any type of defensive weapon, whether loaded or unloaded and whether concealed or unconcealed.

149. Mr. Moody's inalienable right to Keep and Bear Arms, is also protected by Article I, Section 21 of the Pennsylvania Constitution, any encroachment there upon is unconstitutional,

by requiring that he obtain a license to carry firearms for purposes of carrying a loaded firearm in his car or concealed about his person or otherwise limit, in any fashion, his ability to protect himself and his family through the use of any type of defensive weapon, whether loaded or unloaded and whether concealed or unconcealed.

150. In the alternative, Mr. Moody's inalienable right to Keep and Bear arms, as protected by the Second Amendment of the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution, has been encroached upon by the Defendants in this matter, by revoking his LTCF for engaging in lawful activity.

151. In regards two both revocations Defendants have failed to bring any charges, fines, or violations against Mr. Moody.

152. However, The Defendant have revoked Plaintiff's LTCF, and substantially infringed upon his Powers and abilities as a law abiding Citizen of these lands.

153. In the first encounter officer Cave testified that the sole reason he stopped Mr. Moody was because he was carrying a firearm. He further testified the Mr. Moody had not committed a crime.

154. In the second encounter approximately a year later with many of the same officers, all acting under the color of law, all of whom knew personally or by reputation Mr. Moody, one of the officers stated that they were ordered to arrest him on site if they found him open carrying his fire arm. Lt. Dandridge stated that as long as Mr. Moody had the time and inclination to do what he was doing, he would be treated in the manner in which the Defendants were treating him.

155. What Plaintiff was doing, were supposed to be a guaranteed

state and federally protected rights, freedoms, and powers each and all inalienable and indefeasible and granted not by law, but by birth in and of itself a gift of the creator of man, Almighty GOD.

156. This being so, Defendants without any element of a crime, and having verified his lawful status, they dismantled his firearm returning it to his person and days later hand delivered a revocation letter to his home in an armed show of force.

157. And the second time they took him firearm and he has made multiple request for its' return and they have refused to return it, in effect seizing Plaintiff's property for lawful constitutionally protected activities.

158. Sometime shortly thereafter, a large contingent of armed officers acting under the color of law showed up on Mr. Moody's door steps in a great show of armed force to hand deliver his revocation letter.

159. State law says this letter is to be mailed.

160. In both instances prior the armed police showing up at his home, throughout the pretextual terry stops the Plaintiff stated that he was exercising his rights and that he was aware of his legal obligations to do so lawfully in Philadelphia.

161. Absolutely NO One, is above the Law! The officers, the City, agents and agencies, the GPU, the PPD, the Commissioner, the broad and all of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendment, and a duty not to deprive or trample constitutional rights or punish the use thereof... They also Had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty, yet that tree lays barren

162. Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

## SIXTH CAUSE OF ACTION - STATE AND FEDERAL RIGHT TO FREEDOM OF SPEECH AND EXPRESSION THEREOF (2 Counts)

### 42 U.S.C. §1983 – First Amendment; Art. 1, § 7 of the Pennsylvania Constitution

163. The foregoing paragraphs are incorporated herein as if set forth in full.
164. Mr. Moody has a right to Freedom Of Speech, as protected by the First Amendment to the United States Constitution, any infringement thereof, is unconstitutional pursuant to the United States Supreme Court decisions in Tinker v. Des Moines Independent Community School Dist. 393 U.S. 503. (1969)
165. ——————————————————————— ——————— ——————————— by requiring that he

obtain a license to open carry firearms for purposes of carrying about his person or otherwise limit, in any fashion, his ability to protect himself and his family through the use of any type of defensive weapon, whether loaded or unloaded and whether concealed or unconcealed. In effect converting a right into a privilege, which is unconstitutional pursuant to the United States Supreme Court decision in Murdock v. Pennsylvania, 319 U.S. 105 (1943) "A State may not impose a charge for the enjoyment of a right granted by the Federal Constitution. " 319 U. S. 113 (All concealed carry "permits" are licenses of a right (Liberty) and as such have been deemed illegal by the High Court) Furthermore, the U.S. Supreme Court has ruled in Shuttlesworth v. City of Birmingham, 373 U.S. 262 (1963) that Citizens "can ignore the license and fee and engage in the right (Liberty) with impunity.      113. Mr. Moody's inalienable indefeasible right to Freedom Of Speech, as protected by Article I, Section 7 of the Pennsylvania Constitution, can not be lawfully encroached upon, doing so is unconstitutional, by requiring that he obtain a license to open carry firearms for purposes of carrying about his person or otherwise limit, in any fashion, his ability to protect himself and his family through the use of any type of defensive weapon, whether loaded or unloaded and whether concealed or unconcealed. In effect converting a right into a privilege.

166.   Arguendo, however, Mr. Moody was in full and total compliance with all of the Federal, State, and Local City Laws and Ordinances at the time of the encounters. In the alternative, Mr. Moody's inalienable indefeasible right to Freedom Of Speech and the Expression Thereof, as protected by the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution, and can not be lawfully encroached upon for engaging in lawful activity. Defendants have however revoked Mr. Moody's LTCF for engaging in lawful activities.

167.   The officers, the City, agents and agencies, the GPU, the

PPD, the Commissioner, the broad and all of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendment, and a duty not to deprive or trample constitutional rights or punish the use thereof... They also had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty.

168.  Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount  to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

**SEVENTH CAUSE OF ACTION- STATE AND FEDERAL RIGHT TO A SPEEDY AND PUBLIC TRIAL, BY AN IMPARTIAL JURY...TO BE INFORMED OF THE NATURE AND CAUSE OF THE ACCUSATION, TO BE CONFRONTED WITH THE WITNESSES AGAINST HIM, TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR, AND TO HAVE...FOR HIS DEFENSE (2 Counts) 42 U.S.C. §1983 –**

**SIXTH Amendment; Art. 1, § 9 of the Pennsylvania Constitution**

169. The foregoing paragraphs are incorporated herein as if set forth in full.

170. Mr. Moody's inalienable indefeasible right To A Speedy And Public Trial, By An Impartial Jury Of The State And District Wherein The Crime Shall Have Been Committed, Which District Shall Have Been Previously Ascertained By Law, And To Be Informed Of The Nature And Cause Of The Accusation; To Be Confronted With The Witnesses Against Him; To Have Compulsory Process For Obtaining Witnesses In His Favor, And To Have The Assistance Of Counsel For His Defense as protected by the Sixth Amendment of the United States Constitution, And Article I Section 9 has not been allowed in the private courtrooms, of what the Defendants call the Justice Building which is not Pursuant To The United States Supreme Court Decision in Crawford v. Washington, 541 U.S. 36 (2004).

171. "No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa.C.S. § 553.

172. The local agency must allow examination and cross-examination of witnesses at the hearing. 2 Pa.C.S. § 554.

173. No witness(es), nor proof of any crime have been brought against Mr. Moody. Furthermore, there has been no evidence of an injured part(y/ies), no tally of lost or damages to property. Nothing!

174. Adjudications made pursuant to the Local Agency Law must be in writing and accompanied with findings of fact and reasons

for the adjudication. 2 Pa.C.S. § 555.

175. No notice was sent to Mr. Moody prior to Commissioner Ross and the GPU's revocation letters informing Mr. Moody of the adjudication.  (in either hearing)

176. No hearing was held before the revocation of Mr. Moody's LTCF.  (In either hearing)

177. Mr. Moody was not given the ability to examine or cross-examine any witnesses  in relation to the revocation of his LTCF. (In either hearing)

178. Mr. Moody was not even made aware if any witnesses were examined in relation  to the revocation of his LTCF.  Nor was he given the opportunity to present witness on his behalf. (In either hearing)

179. No findings of fact or specific reasons were given for the revocation of Mr. Moody's LTCF.  (In either hearing)

180. Nor findings of fact or specific reasons were given for the affirmation of the revocation of Mr. Moody's LTCF. *See* Notice of Decision, attached hereto and incorporated herein as Exhibit B.

181. Mr. Moody has never been charged or convicted of any misdemeanor or felony charge. (Furthermore, Mr. Moody holds both State and Federal Security Clearances throughout the nation.)

182. Moreover, Mr. Moody has violated NO LAWS that would deny or prohibit the ownership, use, or possession of firearms as guaranteed in The 2nd  Amendment of the United States Constitution and Article I, section 21 of The Pennsylvania Constitution.

183. The sole reason for the revocation of Mr. Moody's LTCF is

merely putative the Commissioner Ross and the GPU had "good cause"; yet Commissioner Ross and the GPU fail to provide any articulable, factual basis for such legal conclusion, in violation of Caba v. Weaknecht, 64 A.3d 39, 66 (Pa. Cmwlth. 2013). *See,* Exhibit A.

184. As the Notice of Revocation fails to state an articulable, factual basis for the revocation.

185. The affirmation of the revocation of Mr. Moody's LTCF. *See* Notice of Decision, attached hereto and incorporated herein as Exhibit B. Also fails to state an articulable, factual basis for the revocation, it also usurps the power and authority of the tenets of the 6th Amendment in that the review and all of it's elements were private and closed with no public access to the hearing.

186. Mr. Moody has an inalienable indefeasible right To A Speedy And Public Trial, By An Impartial Jury Of The State And District Wherein The Crime Shall Have Been Committed, Which District Shall Have Been Previously Ascertained By Law, And To Be Informed Of The Nature And Cause Of The Accusation; To Be Confronted With The Witnesses Against Him; To Have Compulsory Process For Obtaining Witnesses In His Favor, And To Have The Assistance Of Counsel For His Defense as protected by the Sixth Amendment of the United States Constitution, And Article I Section 9. Defendants have denied Plaintiff's the elements of these rights while acting under the color of law.

187. In the alternative, Mr. Moody's inalienable indefeasible right To A Speedy And Public Trial, By An Impartial Jury Of The State And District Wherein The Crime Shall Have Been Committed, Which District Shall Have Been Previously Ascertained By Law, And To Be Informed Of The Nature And Cause Of The Accusation; To Be Confronted With The Witnesses Against Him; To Have Compulsory Process For Obtaining Witnesses In His

Favor, And To Have The Assistance Of Counsel For His Defense as protected by the Sixth Amendment of the United States Constitution, And Article I Section 9 , Defendants have revoked his LTCF for engaging in lawful and constitutionality protected activity.

188.  The officers, the City, agents and agencies, the GPU, the PPD, the Commissioner, the broad and all of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendments, and a duty not to deprive or trample constitutional rights or punish the use thereof... They also had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty.

189.  Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount  to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF

## EIGHTH CAUSE OF ACTION- STATE AND FEDERAL RIGHT TO PROTECTION FROM AND/OR OF SLAVERY(2 Counts) 42 U.S.C. §1983 – THIRTEENTH Amendment; Art. 1 § 1 of the Pennsylvania Constitution.

190. The foregoing paragraphs are incorporated herein as if set forth in full.

191. Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

192. Section 2. Congress shall have the power to enforce this article by appropriate legislation.

**Inherent rights of mankind.**

193. *All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.*

194. James Walker Moody has inherent, inalienable, indefeasible rights, freedoms, powers, and claims in the truth and elements of paragraphs 191,192, and 193.

195. James W. Moody is no slave, nor is he the son, or grandson of slaves.

196. Nor is James W. Moody a convict, neither is he the son, or grandson of convicts.

197. Mr. Moody has never been charged with a crime, or unlawful offense. Nor has he ever been convicted of one.

198. Defendants have NEVER charged Mr. Moody with a crime, or unlawful offense. Nor have they convicted him of one.

199. The 13th Amendment states that except as a punishment for crime whereof the party shall been duly convicted, shall exist

within the United States, or any place subject to their jurisdiction.

200. Therefore to do otherwise would be an act of breaking the law as it were…

201. This America, these United States has a long and brutal history manifesting the horrors of the condition of Slavery and the mistreatment and inhumanity therein.

202. No Rights, No Freedoms, NO Powers, NOR the ability to enjoy or defend one's very own life or liberty or that of their family or friends.

203. No right to property, in fact, at anytime one might stop and detain a slave against their will, place them in chains or bindings, or trappings under threat of physical violence up to an including death.

204. Moreover slaves were often charged or punished for the crimes or offense of others, even when those crimes and offenses were perpetrated by the slaves accusers.

205. ***Even when everyone knew that the slave was innocent, STILL the Slave was PUNISHED.***

206. The guilty, those that have committed the crimes and offenses against society and even more so against the slave are free to continue with their lawlessness.

207. Defendants have stopped and detained Mr. Moody both times against has will.

208. He has done everything legally and lawfully required by law as well as conversed and behaved in a calm, cool, compliant and respectful and professional manner when confronted by Defendants. Whether in detainment or in their "Justice Building".

209. He Has been placed in chains, he has been placed in a sweatbox , and he has been stripped of his property and his freedom at the hands of his oppressors, at the hands of the Defendants.

210. He has been rendered thus and so, not unlike a slave, at the hands of the Defendants.

211. Alternately, Defacto or otherwise Mr. Moody has been rendered a SLAVE.

212. To say otherwise is to ignore the facts, that he was at all times stopped and forcibly detained against his will by those that took authority over him as would a slave's overseer (by Defendants).

213. He was placed in chains and confined in sweat box, as one would often do to slaves to show who was in charge, in the second he encounter Mr. Moody was placed in hand irons and lead about and ordered to stay as if he were animal as he was displayed to and fro before being placed in the "sweat box" for at least 45 minutes, during at heat wave with an outside temperature exceeding 90° (by Defendants).

214. His Freedoms and property stripped from his possession, and not returned by his oppressors by the Defendants.

215. Ultimately like the SLAVE, he was punished for crimes and offenses that he did not commit. Also he was neither charged, accused, nor convicted thereof any crime or offense by his oppressors, by the Defendants.

216. And as he stood before them in their "Justice Building" he was left bereft and devoid of the inherent, inalienable, indefeasible right, freedom, power or access to his 1st, 2nd, 4th, 5th, 6th, 13th, or 14th Amendment right protections as recognized and guaranteed by the United States Constitution.

217. Thus being so Defendants passed judgement upon the Plaintiff and confirmed the LTCF revocation.

218. "For a crime to exist there must be an injured party (Corpus Delicti) There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." *Snerer vs. Cullen*, 481 F. 946. (9th Cir. 1973)

219. I submit to you James Walker Moody, Plaintiff and injured party. Rendered unto fore as a SLAVE.

220. The officers, the City, its' agents and agencies, the GPU, the

PPD, the Commissioner, the broad and all of its' members had a duty to maintain and follow the law, to maintain and protect access to the law pursuant the 5th & 14th amendments, and a duty not to deprive or trample constitutional rights or punish the use thereof… They also had a duty to follow the prescriptions and ruling of the court as stated in docket No. 121203785. They have one and all taken an oath to fulfill that solemn duty.

221. Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983. Plaintiff brings this claim for injuries, emotional distress, property, safety, and enjoyment of life.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

1. compensatory damages in an amount of 150 million U.S. dollars or amount  to be determined by this Court to be just, fair and reasonable;
2. punitive damages;
3. prejudgment and post judgment interest;
4. reasonable (counsel) fees; and,
5. such other and further relief as the Court deems just and appropriate.
6. As well as all of the Plaintiff's property which includes his firearm and LTCF.

Respectfully Submitted,
_____ James W. Moody, The Patron Of Philadelphia_____

31
12, 31, 18