# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES W. MOODY,** | : |
| **Plaintiff,** | : **CIVIL ACTION** |
| | : No. 2:18-cv-02413 |
| v. | : |
| **THE CITY OF PHILADELPHIA, et al.** | : |
| **Defendant** | : |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Defendants' Third Motion to Dismiss, it is **HEREBY ORDERED** that the Motion is **GRANTED** and that Plaintiff's claims are dismissed.

BY THE COURT:

_____
JOEL H. SLOMSKY, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES W. MOODY, | : |
|                      Plaintiff, | :  CIVIL ACTION |
| | :  No. 2:18-cv-02413 |
| v. | : |
| THE CITY OF PHILADELPHIA, et al. | : |
|                      Defendant | : |

## DEFENDANTS' THIRD MOTION TO DISMISS

Defendants the City of Philadelphia, the Philadelphia Police Department, the Gun Permit Unit, Commissioner Richard Ross, Jr., the Board of License & Inspection, and Bradford A. Richman, by and through the undersigned counsel, hereby file this Third Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court dismiss the claims asserted against them with prejudice.

Date:  April 22, 2019

                                                                                        Respectfully submitted,

                                                                                        _/s/ Andrew F. Pomager_____
                                                                                        Andrew F. Pomager
                                                                                       Assistant City Solicitor
                                                                                       Pa. Attorney ID No. 324618
                                                                                       City of Philadelphia Law Department
                                                                                       1515 Arch Street, 14th Floor
                                                                                       Philadelphia, PA 19102
                                                                                       215-683-5446 (phone)
                                                                                       215-683-5397 (fax)
                                                                                       andrew.pomager@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES W. MOODY, | : |
| Plaintiff, | : CIVIL ACTION |
| | : No. 2:18-cv-02413 |
| v. | : |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendant | : |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' THIRD MOTION TO DISMISS**

Plaintiff James W. Moody's Second Amended Complaint against Defendants the City of Philadelphia (the "City"), the Philadelphia Police Department (the "PPD"), the Gun Permit Unit, Commissioner Richard Ross, Jr., the Board of Licenses & Inspection (the "Board"), and Bradford A. Richman should be dismissed because the Court should abstain from jurisdiction over claims regarding the revocation of his license to carry a firearm (LTCF) pursuant to Younger v. Harris. 401 U.S. 37 (1971). Moreover, Plaintiff's remaining claims should be dismissed as they are not properly pled and fail to state a claim upon which relief can be granted.

**I.    BACKGROUND**

This case involves two incidents where Plaintiff was stopped while carrying a firearm and refused to identify himself or produce his LTCF. See 2d Am. Compl. at ¶¶ 70–100 (ECF No. 18).

**A.    Procedural Background**

On May 1, 2018, Plaintiff initiated this action by filing his Complaint in Pennsylvania state court. Compl, Notice of Removal at 6–10 (ECF No. 1). Defendants removed this action to the jurisdiction of this Court on June 8, 2018. See generally Notice of Removal (ECF No. 1).

Defendants moved to dismiss for failure to state a claim. Mot. Dismiss (ECF No. 2). On September 13, 2018, Plaintiff filed a response to the motion, which the Court accepted as Plaintiff's Amended Complaint. See Am. Compl. (ECF No. 4); Order 10/2/18 (ECF No. 5). On April 5, 2019, the Court disposed of numerous motions and deemed filed Plaintiff's Second Amended Complaint.[1] Order 4/5/19 (ECF No. 17).

### B. The Voluminous and Unfocused Nature of the Second Amended Complaint

Although the Second Amended Complaint is much shorter than the Amended Complaint, it nonetheless spans 38 pages and 221 paragraphs. See generally, 2d Am. Compl. (ECF No. 18). Except as referred to in the following factual sections, the allegations remain largely duplicative, conclusory, editorial, or irrelevant. Plaintiff's factual allegations are out of order and facts relating to discrete incidents are spread across various sections. Although Plaintiff does not attach exhibits, he frequently refers to them, presumably relying on the 32 pages of 8 exhibits attached to the Amended Complaint. See, e.g., id. at ¶¶ 30, 70, 180. The Second Amended Complaint incorporates by reference two YouTube videos with a total length of 1 hour, 27 minutes, and 59 seconds. See id. at ¶ 97.

### C. Plaintiff's May 2, 2016 Stop by Police and Subsequent LTCF Revocation

On May 2, 2016, Plaintiff alleges he was "intercepted" by Officer Cave. Id. at ¶ 70. Plaintiff alleges that, later, "Officer Cave . . . testified that the sole reason he stopped [Plaintiff] was because he was carrying a firearm." Id. at ¶¶ 70, 119, 153. Additional officers arrived, handcuffed, and searched Plaintiff. Id. at ¶¶ 32, 72–74, 81. During the interaction, the officers found Plaintiff's LTCF and Officer Cave was informed by radio that he had a valid LTCF. Id. at ¶ 121. Plaintiff does not allege he was held further, arrested, or charged as a result.

---

[1] The document construed as the Second Amended Complaint is labeled "Revision Response to Defendant's Motion." (ECF No. 18). It is referred to here only as the Second Amended Complaint.

On May 11, 2016, Plaintiff's LTCF was revoked pursuant to 18 Pa. Cons. Stat. Ann. § 6109. Id. at ¶ 30. The revocation letter indicates the LTCF was revoked for "good cause" and that Plaintiff "[f]ail[ed] to produce LTCF & placed officers and community in danger." See Revocation Letter 5/11/16, Am. Compl. at 86, Ex. A (ECF No. 4); see 2d Am. Compl. at ¶¶ 31–32 (ECF No. 18). Plaintiff alleges he received no notice or hearing prior to the May 11, 2016 revocation letter. 2d Am. Compl. at ¶¶ 175–76 (ECF No. 18).

### D. Plaintiff's Administrative and State Remedies for the first LTCF Revocation

Plaintiff appealed the revocation to the Board. See id. at ¶ 144. On November 8, 2016, a hearing was held. Id. at ¶ 113. Plaintiff complains that, when the Board affirmed the revocation, "[n]o findings of fact or specific reasons were given" for the revocation or affirmation. Id. at ¶ 51–52. Plaintiff further appealed this decision to the Philadelphia Court of Common Pleas. See Appeal, John Doe v. Phila. Bd. of License and Inspection Review, No. 161200140 (Phila. C.C.P. Dec. 5, 2016).[2] On June 5, 2017, the City notified Plaintiff that his LTCF would be reinstated. 2d Am. Compl. at ¶ 144 (ECF No. 18). Accordingly, the appeal to the Court of Common Pleas was dismissed as moot on July 12, 2017. See id.; Order 7/12/17, John Doe, No. 161200140 (Phila. C.C.P. July 12, 2017).

### E. Plaintiff's June 16, 2017 Stop by Police and Subsequent LTCF Revocation

Prior to that dismissal, but in the week following the June 5, 2017 reinstatement, Plaintiff picked up his reinstated LTCF. See 2d Am. Compl. at ¶¶ 87–88 (ECF No. 18). On June 16, 2017, Plaintiff was "accosted" by police while jogging. Id. at ¶ 88. Plaintiff refused to identify himself

---

[2] A matter of public record may be considered by the Court on a motion to dismiss. See Grp. Against Smog & Pollution, Inc. v. Shenango, Inc., 810 F.3d 116, 127 (3d Cir. 2016). To provide a degree of brevity, the referenced filings from this action are not attached hereto but can be provided by undersigned counsel to the Court and Plaintiff upon request.

or comply with a request to see his LTCF. See YouTube Video 1[3] at 2:30 et seq; see also Am. Compl. at ¶¶ 171, 213 (ECF No. 4). One of the officers stated, "As far as I know, your permit was revoked!" YouTube Video 1, at 2:30; also, Am. Compl. at ¶ 209 (ECF No. 4). Plaintiff was detained "in a sweat box," that he does not otherwise describe. 2d Am. Compl. at ¶ 97, 213. The officers learned at some point that Plaintiff's LTCF was valid. Id. at ¶ 98.  Plaintiff was ultimately released but his firearm was seized. See id. at ¶¶ 97, 157, 213. Plaintiff was cited for a disorderly conduct. Code Violation Notice, Am. Compl. at 116, Ex. H (ECF No. 4).

Plaintiff quotes various select, disjointed, and often unattributed statements he claims the officers made during the June 16, 2017 encounter. See 2d Am. Compl. at ¶¶ 90–101 (ECF No. 18).[4] The import of these statements is not made entirely clear by Plaintiff, although he presumably intends them to demonstrate some sort of malfeasance on behalf of the officers.

On June 20, 2017, Plaintiff's LTCF was again revoked as a result of the June 16, 2017 incident. See id. at ¶ 175–80. The revocation letter indicated the revocation was for good cause and that Plaintiff failed to produce his LTCF, placing Plaintiff, police officers, and the community in danger. See Revocation Letter 6/20/17, Am. Compl. at 109, Ex F (ECF No. 4). Plaintiff again complains he was provided no notice or hearing prior to receiving the letter. 2d Am. Compl. at ¶¶ 175–76 (ECF No. 4).

---

[3] *Philadelphia Police Department at it again targeting James W. Moody "you have to prove evidence,"* YouTube, https://youtu.be/mFhQXPGkBLk (hereinafter, YouTube Video 1). As previously stated, Plaintiff refers to the video in the Second Amended Complaint and quotes selectively from it. See 2d Am. Compl. at ¶ 97 (ECF No. 18).

[4] Defendants do not agree with the characterization of most of these statements when compared to video referenced by Plaintiff. See id. at ¶ 97. But in at least one instance, Plaintiff appears to entirely misrepresent that Officer Ramirez "stated on video" that he was under orders "to arrest [Plaintiff] on sight." Id. at ¶ 90. This is entirely unsupported by video referenced by Plaintiff. See, e.g., YouTube Video 1 at 5:40 ("I'm investigating you.").

4

On August 3, 2017, in response to a letter from Plaintiff, the PPD informed Plaintiff he could petition the courts for return of the LTCF. PPD Letter 8/3/17, Am. Compl. at 115, Ex. H (ECF No. 4).

### F. Allegations, or Lack Thereof, Concerning Defendants Brad Richman and Richard Ross, Jr.

Plaintiff's allegations concerning the individual Defendants Richman and Ross are sparse. Plaintiff complains of Richman's conduct, as an advocate for the City, during one of the hearings. See 2d Am. Compl. at ¶ 135 (ECF No. 18). During the second police encounter, one of the officers allegedly said "gun was taken per Brad Richman," in reference to the paperwork, although it is unclear how or when this direction was given. Id. at ¶ 101.

As to Ross, Plaintiff identifies him as the Police Commissioner and describes in conclusory fashion his oversight of and policymaking capacity for the PPD and Gun Permit Unit. Id. at ¶ 6. Without specifying what actions Ross took in the revocations, Plaintiff attributes them to him. See, e.g., id. at ¶ 67 ("Commissioner Ross' revocation . . . .").

### G. Plaintiff's Claims

Plaintiff raises multiple claims pursuant to § 1983 under the U.S. Constitution, as well as their Pennsylvania constitutional counterparts: (1) in the First Cause of Action, a Fourth Amendment unreasonable seizure claim during his first encounter with police, (id. at ¶¶ 68–85); (2) in the Second Cause of Action, a Fourth Amendment unreasonable seizure claim during his second encounter with police, (id. at ¶¶ 86–102); (3) in the Third Cause of Action, a Fourteenth Amendment procedural due process claim, (id. at ¶¶ 103–129); (4) in the Fourth Cause of Action, a Fourteenth Amendment procedural due process claim,[5] (id. at ¶¶ 130–146); (5) in the

---

[5] Plaintiff refers to a "subsequent hearing," (id. at ¶ 131), but does not describe this hearing sufficiently to distinguish it from the one complained of in the Third Cause of Action, without speculation.

Fifth Cause of Action, a Second Amendment claim, (id. at ¶¶ 147–162); (6) in the Sixth Cause of Action, a First Amendment freedom of speech and expression claim, (id. at ¶¶ 163–168); (7) in the Seventh Cause of Action, various claims arising under the Sixth Amendment, (id. at ¶ 169–189); (8) in the Eighth Cause of Action, a Thirteenth Amendment claim, (id. at ¶¶ 190–221). In each of these claims he prays for relief in, *inter alia*, the form of the return of his firearm and LTCF. E.g., id. at ¶ 221.

## II.   ARGUMENT

The court determines whether dismissal is appropriate under Rule 8 pursuant to its own discretion. See Bolick v. NE Indus Servs. Corp., 666 F. App'x 101, 103 (3d Cir. 2017) (affirming dismissal of pro se plaintiff's § 1983 complaint for, *inter alia*, failure to comply with Rule 8(a)).

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without stating a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's bald assertions" or "legal conclusions." Anspach v. City of Philadelphia, 503 F.3d 256, 260 (3d Cir. 2007).

Although a pro se plaintiff's pleading should be construed liberally, it still must meet the Iqbal plausibility standard. Phillips v. Northampton Cnty., 687 F. App'x 129, 131 (dismissal appropriate where pro se plaintiff failed to allege defendant's personal involvement) (3d Cir. 2017) (citing Fantone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015)).

### A. Plaintiff's Complaint Should be Dismissed Because He Failed to Set Out a Short and Plain Statement of His Claims

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). The complaint must be sufficiently clear that the court or the opposing party need not "forever sift through its pages in search of the nature of the plaintiff's claim." Bolick, 666 F. App'x at 104 (quotation marks omitted). In Bolick, the plaintiff pled "numerous disparate alleged factual predicates" involving private parties, judicial misconduct, municipal entities, and conspiracy in a 95-page complaint and 29 pages of exhibits. Id. at 102–03. The district court dismissed pursuant to Rule 8 because the defendants were left to "guess what of the many things discussed constituted a specific cause of action against them." Id. at 103 (alterations omitted). The Bolick court agreed, finding the claims were not simple, concise, and direct, because the complaint was "too voluminous and unfocused to be intelligible," "name[d] numerous parties and narrate[d] various events that [had] no apparent connection to or among each other," and was "rife with irrelevant facts." Id.

Plaintiff's Second Amended Complaint similarly fails to state its claims in a short and plain manner. Although the Second Amended Complaint does not, by sheer page count, approach the 95 pages in Bolick, Plaintiff nonetheless refers to numerous exhibits, some previously entered on the docket and some (such as his Board hearing transcript), never provided to Defendants. In addition, the Second Amended Complaint incorporates almost an hour and half of video from which Plaintiff selectively quotes. Defendants are extremely burdened by the time required to again review a pleading from Plaintiff material that is mostly irrelevant, utterly conclusory, argumentative, or redundant. Accordingly, the Amended Complaint should be dismissed.

> **B. The Court Should Dismiss Plaintiff's Constitutional Challenges to the Revocation of His LTCF Because His Ongoing State Proceedings Warrant <u>Younger</u> Abstention[6]**

A federal court may abstain from jurisdiction where it would avoid unduly interfering with legitimate activities of the state. <u>Younger v. Harris</u>, 401 U.S. at 44–45 (1971). A <u>Younger</u> abstention is appropriate where (1) there is "an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) the state proceedings . . . implicate important state interest, and (3) the plaintiff [will be] afforded an adequate opportunity in the state proceedings to raise constitutional claims." <u>Gentlemen's Retreat, Inc. v. City of Philadelphia</u>, 109 F. Supp. 2d 374, 378 (E.D. Pa. 2000) (citing <u>Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n</u>, 457 U.S. 423 (1982)).

Regarding the first prong, the City's administrative appeal process is a judicial proceeding. <u>Id.</u> at 379 n.4 (citing <u>Midnight Sessions, Ltd. V. City of Philadelphia</u>, 945 F.2d 667 (3d Cir. 1991)). Moreover, the "state's trial-and-appeals process is treated as a unitary system." <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 790 (3d Cir. 1994) (internal quotation marks omitted). The federal litigant must exhaust his state appellate remedies. <u>Id.</u> By extension, a state proceeding is "pending" where the federal plaintiff failed to pursue state judicial review of an administrative determination. <u>Id.</u> (citing <u>O'Neill</u>, 32 F.3d at 790). In <u>Gentlemen's Retreat, Inc.</u>, the plaintiff received a "Cease Operations Order" from a City agency but did not appeal to the Board. <u>Id.</u> at 376. The Court determined that, pursuant to <u>O'Neill</u>, plaintiff's failure to attempt to secure review by the Board satisfied the requirement that the proceeding be pending. <u>Id.</u> at 379.

Accordingly, the first prong required for <u>Younger</u> abstention is met here. Plaintiff's May 11, 2016 revocation, which reached an appeal to the Board, was not further appealed after his

---

[6] Defendants acknowledge that they removed this action but note that the Complaint offered Defendants no facts prior to the removal. <u>See</u> Compl, Notice of Removal at 6–10 (ECF No. 1).

LTCF was returned and the Board appeal was denied as moot.[7] That is, Plaintiff did not appeal to the Court of Common Pleas pursuant to the Local Agency Law. Similarly, Plaintiff's June 20, 2017 revocation could have been (if it is not in the process of being) appealed to the Board and the Pennsylvania court system. Both actions are pending pursuant to Gentleman's Retreat and O'Neill.

In assessing the second Younger abstention prong, Courts do not focus on the outcome of a particular case, but instead "look to the importance of the generic proceedings to the State." O'Neill, 32 F.3d at 792. The O'Neill Court noted the City's "vital and critical interest in the functioning of a regulatory system . . . which is intimately associated with . . . the municipal government in particular." Id. It also acknowledged the substantial interest in "enforcing criminal laws that bear a close relationship to criminal proceedings." Id. Outside of the Younger context, this Court has acknowledged the City's "prevailing interest in ensuring that persons licensed to carry firearms do not present a danger to public safety." Potts v. City of Philadelphia, 224 F. Supp. 2d 919, 943 (E.D. Pa. 2002).

The second prong required for Younger abstention is therefore likewise met. Federal litigation of these claims, particularly given Plaintiff's challenges of the revocation on grounds that include the regulatory statutes themselves, would essentially usurp the City's regulatory ability by supplanting its regulatory process and its internal and statutory appellate mechanism.

The third prong is also clearly established since, "under Pennsylvania law, a plaintiff may raise constitutional claims during the judicial review of an administrative decision." Gentleman's Retreat, 109 F. Supp. at 380; see 2 Pa. Cons. Stat. Ann. § 753. Constitutional challenges are accordingly clearly available to Plaintiff under the pending state proceedings.

---

[7] Plaintiff's claims concerning this revocation are also barred by claim preclusion and mootness.

Given the strong state interest in resolving Plaintiff's challenges to his revocations through the regulatory and appellate mechanisms designed for specifically that purpose, and given Plaintiff's ability to raise constitutional challenges therein, abstention is appropriate here.

### C. The Court Should Dismiss Claims Against the Philadelphia Police Department, the Gun Permit Unit, and the Board of Licenses and Inspections Because They Are Not Legal Persons Subject to Suit

Departments of the City of Philadelphia do not have a separate corporate existence and are not properly named as parties to a suit. 53 Pa. Stat. § 16527. As a matter of law, and pursuant to § 16527, the PPD is not a legal entity that can be sued, and dismissal of the PPD as a defendant is appropriate. Regalbuto v. City of Philadelphia, 937 F. Supp. 374, 377 (E.D. Pa. 1995) (citing Philadelphia v. Glim, 149 Pa. Commw. 491, 613 A.2d 613 (1992)). Because Plaintiff here has attempted to bring suit against the PPD, its dismissal is appropriate. The Gun Permit Unit, as a unit within the PPD, should also be dismissed. Similarly, the Board of Licenses and Inspections is a body within Philadelphia's Department of Licenses and Inspections, and therefore should also be dismissed as a Defendant.

### D. Plaintiff's Claims Against the City Fail Because Plaintiff Did Not Plead Facts Plausibly Establishing the Elements of a Monell Claim

A municipality cannot be held liable under § 1983 for its employees' constitutional torts by way of respondeat superior. McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Rather, under Monell, a municipality may be liable in one of three ways. Id. (citing Monell, 436 U.S. at 694). First, the municipality may be liable if the employee acted pursuant to a government policy or custom. Monell, 436 U.S. at 694. Second, the municipality may be liable if the employee had policy-making authority. McGreevy, 413 F.3d at 367. Third, the municipality may be liable if an official with authority ratified the unconstitutional actions of the subordinate employee. Id.

In Wood v. Williams, the United States Court of Appeals for the Third Circuit affirmed the dismissal of a Monell claim. 568 F. App'x 100, 102 (3d Cir. 2014). The plaintiff in Wood set forth a series of conclusory allegations that "simply paraphrase[d]" the elements of Monell liability. Id. at 103–04. The Court held that such "conclusory and general" averments were "insufficient" and "fail[ed] to satisfy the rigorous standards of culpability and causation required to state a claim for municipal liability." Id. at 104 (citations and quotation marks omitted). Averments that "amount to a mere recitation of the . . . elements required to bring forth a Monell claim . . . are insufficient to survive a motion to dismiss." Butler v. City of Philadelphia, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). In Torres v. City of Allentown, the court found dismissal appropriate where the plaintiff's complaint "lack[ed] any specific allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008); see also Young v. City of Chester, 17-3066, 2018 WL 1583674 (E.D. Pa. April 2, 2018) (conclusory policy allegations involving, *inter alia*, "legal cause to stop," warranted dismissal of Monell claims).

At best, Plaintiff attempted to impute liability to the City through the first prong of Monell. That is, even assuming he sufficiently alleged that Ross had policy-making authority relevant to the alleged violations, he did not allege Ross was personally involved in the underlying conduct, or that he ratified actions of a subordinate. Even under the first prong, however, Plaintiff's conclusory allegations fall short of establishing a plausible Monell claim.

Plaintiff's allegations here were clearly insufficient pursuant to Wood, Butler, Torres, and Young. It is clear here that Plaintiff complains about two police stops and the resulting revocations of his LTCF. He does not attempt, even in conclusory fashion, to establish a specific

11

policy or custom that caused the allegedly unconstitutional conduct. Accordingly, the City should be dismissed.

### E. Plaintiff Failed to Allege a Specific Supervisory Practice or Procedure Defendant Ross Failed to Employ to Establish his Supervisory Liability.

Liability for a civil rights claim cannot be imputed vicariously. Evancho v. Fisher, 425 F.3d 347, 353 (3d Cir. 2005). Instead, an individual defendant must have personal involvement in the alleged constitutional violation. Id. (dismissal of Attorney General appropriate where complaint merely hypothesizes Attorney General's involvement in alleged violations based on his position). Supervisory liability can be imposed on a defendant where the plaintiff

> (1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001); see also McGee v. Thomas, 16-5501, 2018 WL 347578 (E.D. Pa. Jan. 10, 2018) (dismissal of supervisory liability claims appropriate where supervising practice is unidentified and supervisors' liability stated in only conclusory terms). It is insufficient to simply argue the alleged constitutional violation would not have occurred if the supervisor had done more. Brown, 269 F.3d at 216. Instead, "the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference." Id.

Plaintiff failed to allege any facts to support an inference that Ross had any direct involvement for the isolated stops of Plaintiff by police officers. Similarly, even liberally construing Plaintiff's allegations, they did not permit an inference that any of the elements of supervisory liability could be satisfied. Primarily, Plaintiff failed to allege an absent supervisory

practice or policy that might have prevented the alleged constitutional violations. As such, Plaintiff of course did not plead any "specific acts or omissions" evidencing Ross's deliberate indifference to the unpled risks created by the unpled absent policies and procedures. It is clear instead that Plaintiff relies solely on Ross's position of authority to establish supervisory liability. Pursuant to Evancho, dismissal of Ross is therefore appropriate.

### F. Plaintiff has Not Identified the Personal Involvement of Defendants Ross or Richman in Any of the Alleged Violations

A threshold requirement of a § 1983 claim requires a Plaintiff demonstrate a defendant's personal involvement in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff makes only conclusory allegations against Ross and Richman, insufficient to maintain an action against them. Plaintiff can point to no action taken by Ross and instead attempts merely to claim the revocations were undertaken "by" him. Similarly, Richman is mentioned sparsely. While Plaintiff does complain of a few actions by Richman, these are essentially actions taken by Richman as an advocate in the course of a revocation hearing. For example, Plaintiff alleges Richman made an "outburst" in which he argued whether certain law was applicable. He does not plausibly allege, as he would need to, that Richman's acts or omissions caused any alleged constitutional violations.

### III. CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiff's claims against Defendants with prejudice.

Date: April 22, 2019                                   Respectfully submitted,

  /s/ Andrew F. Pomager_____
Andrew F. Pomager
Assistant City Solicitor
Pa. Attorney ID No. 324618
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5446 (phone)
215-683-5397 (fax)
andrew.pomager@phila.gov