IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES W. MOODY,

              Plaintiff,

    v.

CITY OF PHILADELPHIA, et al.,

              Defendants.

CIVIL ACTION
NO. 18-2413

## OPINION

**Slomsky, J.**                                              **July 10, 2019**

## I.    INTRODUCTION

This action arises out of Plaintiff James W. Moody's ("Plaintiff") interactions with officers of the Philadelphia Police Department on May 2, 2016 and on June 16, 2017. On both occasions, Plaintiff was stopped by officers and failed to produce his License to Carry Firearms ("LTCF"). (Doc. No. 18 ¶¶ 70, 88; Doc. No. 19 at 4.) As a result, Plaintiff's LTCF was revoked, subsequently reinstated, and ultimately revoked again on June 20, 2017. (Doc. No. 18 ¶¶ 30, 31, 166; Doc. No. 19 at 4.) On May 1, 2018, Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County against the City of Philadelphia ("City"), Philadelphia Police Commissioner Richard Ross, Jr. ("Commissioner Ross"), the Philadelphia Police Department Gun Permit Unit ("GPU"), the Philadelphia Police Department ("PPD"), the Board of Licenses and Inspections, and Bradford A. Richmond ("Mr. Richman"), an attorney for the City. (Doc. No. 1.) On June 8, 2018, Defendants removed the action to this Court. (Id.) Plaintiff later amended the Complaint to include as additional Defendants various officers of the PPD and panelists on the Board of Licenses and Inspections. (Doc. No. 18.)

Pursuant to 42 U.S.C. § 1983 ("Section 1983"), Plaintiff alleges civil rights violations against Defendants.[1]  In Count I of the Second Amended Complaint, Plaintiff submits that Defendants violated his right to be secure from unreasonable searches and seizures under the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution by "intercept[ing]" him on May 11, 2016.  (Id. ¶¶ 70-85.)  In Count II, Plaintiff claims Defendants violated his right to be secure from unreasonable searches and seizures under the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution because officers of the PPD stopped him on June 16, 2017.  (Id. ¶ 102.)

In Counts III and IV, Plaintiff alleges Defendants violated his right to due process under the Fourteenth Amendment and Article I, §§ 1, 9, and 11 of the Pennsylvania Constitution with regard to the circumstances leading to the revocation of his two LTCFs.  (Id. ¶¶ 104-129.)  In Counts V and VI, Plaintiff asserts that the impoundment of his firearm and the revocation of his LTCF on two occasions by Defendants constituted a violation of his right to keep and bear arms under the Second Amendment and Article I, § 21 of the Pennsylvania Constitution.  (Id. ¶ 150.)  In Counts VII and VIII, Plaintiff claims Defendants violated his freedom of speech under the First Amendment and Article I, § 7 of the Pennsylvania Constitution.  (Id. ¶ 167.)  In Counts IX and X, Plaintiff contends Defendants violated his right to a speedy and public trial under the Sixth Amendment and Article I, § 9 of the Pennsylvania Constitution during his LTCF appeal hearing. (Id. ¶¶ 171-188.)  Finally, in Counts XI and XII, Plaintiff claims to have been "rendered . . . not unlike a slave" by Defendants in violation of the Thirteenth Amendment and Article I, § 1 of the

---

[1]  The Second Amended Complaint lacks clarity and specificity to the point that the Court has struggled to discern Plaintiff's claims and which claims are being asserted against which Defendants. This Opinion is a result of a concerted effort to attempt to identify Plaintiff's claims and which Defendant is being named in each claim.

Pennsylvania Constitution. (Id. ¶¶ 209-210.) As relief, Plaintiff seeks more than $1 billion in damages as well as the return of his firearm and LTCF. (Id.)

On April 22, 2019, Defendants filed a Motion to Dismiss the Second Amended Complaint for Failure to State a Claim.[2] (Doc. No. 19.) On May 13, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (Doc. No. 20.) For the reasons set forth below, this Court will grant Defendants' Motion to Dismiss on all counts.

## II. BACKGROUND[3]

### A. Factual History

On February 29, 2016, the GPU issued Mr. Moody a LTCF. (Doc. No. 18 ¶ 29.) On May 2, 2016, Plaintiff was stopped by Officer Cave of the PPD while walking in Philadelphia. (Id. ¶ 70.) Plaintiff alleges that Officer Cave stopped him solely because he was carrying a firearm. (Id. ¶ 70.) Additional officers arrived to assist Officer Cave and, together, they detained and searched Mr. Moody. (Id. ¶¶ 72-75.) Upon retrieving Plaintiff's wallet and searching his front pocket, Officer Cave was able to verify both Plaintiff's identity and the validity of his LTCF. (Id. ¶¶ 32, 82, 121.) As a result, the officers released Plaintiff and did not arrest or charge him. (Id. ¶ 81.)

On May 11, 2016, Commissioner Ross and the GPU notified Plaintiff that his LTCF had been revoked for good cause. (Id. ¶ 30.) The revocation notice stated, according to Plaintiff, that he failed to produce his LTCF and placed the "officers and community in danger" during the May 2, 2016, incident.[4] (Id. ¶ 32.) Beyond this statement, however, Plaintiff alleges that the notice

---

[2] This is the third motion to dismiss filed by Defendants in this case. Defendants had previously moved to dismiss the original Complaint (Doc. No. 2) and the Amended Complaint. (Doc. No. 8.) Both motions were denied as moot after the Court allowed Plaintiff to amend his complaints.

[3] The facts from the Second Amended Complaint are accepted as true for purposes of deciding the Motion to Dismiss.

[4] The "revocation notices" are not included in the record.

failed to provide any "articulable factual basis" to support the revocation of his LTCF. (Id. ¶ 33.) Plaintiff appealed the revocation to the Board of Licenses and Inspections. A hearing was held on November 8, 2016, after which the Board affirmed the revocation of Plaintiff's LTCF. (Id. ¶¶ 52, 117.)

Plaintiff next appealed the Board's decision to the Philadelphia Court of Common Pleas. (Id. ¶ 144; Doc. No. 19 at 3.) On June 5, 2017, while the case was still pending in the Court of Common Pleas, the PPD notified Plaintiff that it was reinstating his LTCF. (Doc. No. 18 ¶ 87.) Consequently, Plaintiff's case in the Court of Common Pleas was dismissed as moot. (Id. ¶ 145.)

Shortly thereafter, on June 16, 2017, Plaintiff was jogging in Philadelphia when he was again stopped by two police officers. (Id. ¶¶ 88-89.) While the events of this stop are unclear, Plaintiff asserts he was thrown in a "Sweat Box"[5] while the officers ascertained the validity of his LTCF. (Id. ¶ 97.) After learning that the City had reinstated Plaintiff's LTCF, the officers released Plaintiff but cited him for disorderly conduct and seized his firearm. (Id. ¶¶ 97, 157, 213.) Thereafter, Plaintiff received another notice that due to his interactions with police on June 16, 2017, his LTCF was again being revoked. (Id. ¶ 175.) Based on the allegations in the Second Amended Complaint, it appears these two revocation notices are forms that are issued by the PPD in the name of Commissioner Ross.

**B. Procedural History**

On May 1, 2018, Plaintiff instituted the present action pro se by filing a Complaint in the Court of Common Pleas of Philadelphia County. (Doc. No. 1 at 1.) In the original Complaint, Plaintiff named the City of Philadelphia, PPD, GPU, Commissioner Ross, the Board of Licenses

---

[5] The term "Sweat Box" is not described in the record.

and Inspections, and Mr. Richman as Defendants.  (Id. at 9-10.)  On June 8, 2018, Defendants removed the case from the Court of Common Pleas of Philadelphia County to this Court.  (Id.) The case was initially assigned to Chief Judge Juan R. Sanchez.  (Id.)

Soon after, on June 14, 2018, Defendants filed a Motion to Dismiss the Complaint for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 2.)  Plaintiff failed to respond to Defendants' Motion.  On August 23, 2018, Chief Judge Sanchez ordered Plaintiff to respond by September 13, 2018, and show cause as to why the Complaint should not be dismissed.  (Doc. No. 3.)  On September 13, 2018, Plaintiff responded to the court's order. (Doc. No. 4.)  In his response, Plaintiff included additional factual allegations against Defendants. (Id.)  The court construed the response as a proposed amended complaint and allowed it to be filed as such pursuant to Federal Rule of Civil Procedure 15(a)(2).  (Doc. No. 5.)  As a result, the court denied Defendants' Motion to Dismiss the Complaint as moot.  (Id.)

On October 23, 2018, Defendants filed a second Motion to Dismiss the Amended Complaint for Failure to State a Claim.  (Doc. No. 8.)  On November 19, 2018, Plaintiff filed both a Motion for Leave to Amend the Complaint and a Response to Defendants' second Motion to Dismiss.  (Doc. Nos. 9 & 10.)  On December 31, 2018, before the court had occasion to pass on Defendants' second Motion, Plaintiff filed a "Revision Response to Defendants' Motion."  (Doc. No. 12.)  This "Revision Response," for all intents and purposes, was Plaintiff's Second Amended Complaint. [6]

---

[6]  On February 8, 2018, Plaintiff filed a Request for Entry of Default against Defendants for failure to answer what he considered his Second Amended Complaint.  (Doc. No. 13.)  On February 11, 2019, Defendants filed a Motion to Deny Entry of Default.  (Doc. No. 14.) Defendants explained that an entry of default for failure to respond to Plaintiff's "Revision Response" would be improper because the Court never accepted the proposed pleading as Plaintiff's Second Amended Complaint.  (Id.)  After the case was reassigned, this Court granted Defendants' Motion to Deny Plaintiff's Request for Entry of Default.  (Doc. No. 17.)

On April 4, 2019, the case was reassigned to this Court. (Doc. No. 16.) In an Order entered on April 5, 2019, this Court granted Plaintiff's Motion for Leave to File an Amended Complaint, accepted Plaintiff's "Revision Response" as his Second Amended Complaint, and denied Defendants' second Motion to Dismiss as moot. (Doc. No. 17.) In response to Plaintiff's Second Amended Complaint, Defendants filed on April 22, 2019 the instant Motion to Dismiss the Complaint for Failure to State a Claim. (Doc. No. 19.) On May 13, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion. (Doc. No. 20.)

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal. 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   ANALYSIS

Defendants advance a number of arguments in favor of dismissing the Second Amended Complaint. First, Defendants submit that the Second Amended Complaint should be dismissed because it fails to set out a short and plain statement of claims in accordance with Federal Rule of Civil Procedure 8. (Doc. No. 19 at 7.) Next, Defendants argue that this Court should dismiss Plaintiff's constitutional claims because his ongoing LTCF revocation proceedings warrant an abstention under the United States Supreme Court's decision in Younger v. Harris. 401 U.S. 37 (1971); (Doc. No. 19 at 8.) Third, Defendants contend that the GPU, PPD, and Board of Licenses and Inspections are not proper parties in this case because they do not have separate corporate

existences subjecting them to suit.  (Id. at 10.)  Fourth, Defendants assert that Plaintiff fails to plead facts sufficient to establish the elements of a Monell claim against the City.  (Id.)  Fifth, Defendants argue that the claims against Commissioner Ross should be dismissed because Plaintiff failed to demonstrate his supervisory liability.  (Id. at 12.)  Finally, Defendants aver that the Court should dismiss the claims against both Commissioner Ross and Mr. Richman because Plaintiff is unable to show their personal involvement in the alleged conduct.  (Id. at 13.)

The Court will first address Plaintiff's inability to bring claims against the GPU, PPD, Board of Licenses and Inspections, Commissioner Ross, Mr. Richman, and the additional Defendants named in the Second Amended Complaint.  The Court will then explain how Plaintiff's "ongoing" municipal proceedings do not have the criminal indicia that would make it appropriate for this Court to abstain under Younger.  Lastly, this Court will examine Plaintiff's failure to plead Monell claims against the City under Federal Rule of Civil Procedure 12(b)(6).

### A. The GPU, PPD, and Board of Licenses and Inspections Are Not Legal Entities Subject to Suit

In the present action, Plaintiff names as Defendants the Philadelphia Police Department Gun Permit Unit ("GPU") and Philadelphia Police Department ("PPD") itself in Counts II to XII, and the Board of Licenses and Inspections in Counts III and IV.  (Doc. No. 18.)  In the Motion to Dismiss, Defendants argue that the GPU, PPD, and Board of Licenses and Inspections cannot be sued in this case and that the proper Defendant is the City of Philadelphia.  (Doc. No. 19 at 10.)  For the following reasons, the Court agrees.

With respect to the City of Philadelphia, a Pennsylvania statute provides as follows:

> [N]o such department shall be taken to have had, since the passage of the act to which this is a supplement, a separate corporate existence, and hereafter all suits growing out of their transactions, and all claims to be filed for removing nuisances, together with all bonds, contracts and obligations, hereafter to be entered into or received by the said departments, shall be in the name of the city of Philadelphia.

53 Pa.C.S.A. § 16257.  Pursuant to this statute, it is well-recognized that the PPD cannot be sued as a separate legal entity.  See Gremo v. Karlin, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (citing Baldi v. City of Philadelphia, 609 F. Supp. 162, 168 (E.D. Pa. 1985)) (dismissing the PPD and PPD Northeast Detective Division pursuant to § 16257).  In addition, the GPU, as a unit within the PPD, does not have a separate existence that subjects it to suit.  Id.  Finally, the Department of Licenses and Inspections is considered a sub-department of the City, and is therefore also not amenable to suit under § 16257.  See Phila. Entm't & Dev. Partners, L.P. v. City of Philadelphia, 939 A.2d 290, 292 n.1 (Pa. 2007) (dismissing the Department of Licenses & Inspections under 53 Pa.C.S.A. § 16257 upon finding it did not have a separate legal existence from the City).

Consequently, Plaintiff's claims against the PPD will be dismissed as a matter of law. Furthermore, because the GPU is a unit of the PPD, Plaintiff's claims against it will also be dismissed.  (Doc. No. 19 at 8.)  Finally, the Board of Licenses and Inspections as a body within the City's Department of Licenses and Inspections will be dismissed.  (Doc. No. 19 at 10.)  The City of Philadelphia, which has been sued in this case, is the properly named Defendant.

### B. Plaintiff Fails to Plead Facts Sufficient to Establish the Personal Involvement of PPD Commissioner Ross and Mr. Richman

As previously discussed, Plaintiff brings claims against Police Commissioner Ross and Mr. Richman, an attorney for the City, alleging that they violated his constitutional rights by revoking his LTCF.  (Doc. No. 18.)  In the Motion to Dismiss, Defendants argue that these allegations fall short of showing that Commissioner Ross or Mr. Richman were personally involved in Plaintiff's alleged wrongs.  (Doc. No. 19 at 13.)  As a result, Defendants argue that Plaintiff cannot maintain claims against Commissioner Ross or Mr. Richman in their individual capacities.  This Court agrees.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Paratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)); see also, Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (dismissing claims against Attorney General for failing to describe his personal involvement). A plaintiff may allege personal involvement by showing either "personal direction or actual knowledge and acquiescence." Id.

With regard to Commissioner Ross, Plaintiff alleges in the Second Amended Complaint that:

> Defendant, Police Commissioner Richard Ross Jr. . . . was involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance and revocation of LTCF, as well as responsible for the hiring, training, direction and control and supervision of the Philadelphia Police Department and the Gun Permit Unit of the Philadelphia Police Department.

(Doc. No. 18 ¶ 6.) Beyond these bare assertions, Plaintiff only refers to Commissioner Ross's alleged revocation of his LTCF in a general and conclusory fashion. For instance, Plaintiff alleges that his LTCF was taken by Commissioner Ross in the revocation notices received from the PPD. (Doc. No. 18 ¶¶ 30, 118, 175, 178.) However, because it appears that the notice is a form issued by the PPD in the name of Police Commissioner Ross, Plaintiff fails to allege plausible facts showing that Commissioner Ross personally revoked Plaintiff's LTCF or directed other officers to do so. Plaintiff does not allege that Commissioner Ross had actual knowledge that officers were likely to take Plaintiff's LTCF, nor does Plaintiff allege that Commissioner Ross personally acquiesced to the LTCF revocations. As a result, Plaintiff is unable to describe with the requisite level of detail facts supporting his contention that Commissioner Ross personally violated his

constitutional rights. Consequently, Plaintiff's claims against Commissioner Ross will be dismissed.[7]

Akin to Plaintiff's claims against Commissioner Ross, Plaintiff alleges that Mr. Richman is also accountable for the revocations of his LTCF, as well as for the alleged due process violations that occurred at Plaintiff's Board of Licenses and Inspections hearing. (Doc. No. 18 ¶¶ 10, 88, 135.) With regard to the revocation of his LTCF, Plaintiff alleges that Mr. Richman was "involved in, promoted, ratified, condoned, advised in relation to, or otherwise responsible for the issuance

---

[7] Defendants also argue that Plaintiff fails to provide facts sufficient to establish a supervisory liability claim against Commissioner Ross. Plaintiff, however, does not specifically allege a supervisory claim against Commissioner Ross in the Second Amended Complaint. Defendants' argument is likely predicated on Plaintiff's description, provided above, of Commissioner Ross's position with respect to the GPU and other named officers. Therefore, in an abundance of caution, Defendants argued this point and the Court agrees with their argument.

The Third Circuit has outlined the criteria for a supervisory liability claim.

> The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). In alleging a supervisory liability claim, Plaintiff must do more than argue that the constitutional violation "would not have occurred if the superior had done more than he or she did." Id. (quoting Sample, 885 F.2d at 1118). Rather, Plaintiff must "identify specific acts or omissions . . . that evidence deliberate indifference." Id.

In this case, Plaintiff fails to provide sufficient factual allegations to support a supervisory liability claim against Commissioner Ross. Plaintiff provides no further factual allegations regarding Commissioner Ross's supervision of the PPD or GPU other than the fact that he is the Commissioner. The fact that Commissioner Ross supervises the PPD, however, is not sufficient to state a supervisory liability claim. For this additional reason, the Court will dismiss Plaintiff's claims against Commissioner Ross.

and revocation of LTCF." (Id. ¶ 10.) With regard to the due process violations at his hearing before the Board of Licenses and Inspections, Plaintiff alleges that Mr. Richman had an "outburst" in front of the Board that disrupted the proceedings. (Id. ¶ 135.)

Plaintiff's claims against Mr. Richman are cursory and vague. Plaintiff is unable to explain in any detail how Mr. Richman was involved in the revocation of his LTCF, other than by stating he "promoted, ratified, [and] condoned . . . the issuance and revocation of LTCF." (Doc. No. 18 ¶ 10.) Additionally, Plaintiff fails to adequately allege that Mr. Richman had knowledge of Plaintiff's LTCF revocations and acquiesced to them. As a result, there is no suggestion or inference to be drawn from Plaintiff's allegations that Mr. Richman was involved in the alleged constitutional violations by personally rescinding Plaintiff's LTCF or by directing officers to do the same.

Furthermore, Plaintiff does not provide any detail as to how Mr. Richman's "outburst" during his appeal hearing before the Board of Licenses and Inspections affected his procedural due process rights under the Fourteenth Amendment. Mr. Richman's conduct at the hearing simply shows that he was acting in accordance with his duties as an advocate for the City. Because Plaintiff fails to plead facts sufficient to establish Mr. Richman's personal involvement in the alleged violations of his constitutional rights, Plaintiff's claims against Mr. Richman will be dismissed.

### C. Plaintiff Fails to Plausibly Allege the Personal Involvement of the Officers of the PPD and Members of the Board of Licenses & Inspections with the Requisite Clarity.

In the Second Amended Complaint, Plaintiff names sixteen additional officers of the PPD and four unidentified panelists on the Board of Licenses and Inspections ("Additional Defendants") as Defendants in this case. (Doc. No. 18 ¶¶ 11-28.) Defendants argue that Plaintiff's

claims against the Additional Defendants should be dismissed pursuant to Federal Rule of Civil Procedure 8.[8]  For the reasons set forth below, this Court agrees.

Rule 8 requires parties to set out "a short and plain statement of claim[s] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Every allegation must be "simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  These rules "underscore the emphasis placed on clarity and brevity by the federal pleading rules."  Binsack v. Lackawanna Cty. Prison, 438 Fed. App'x 158, 160 (3d Cir. 2011) (quoting In re Westinghouse Sec. Litig., 90 F.3d 696, 702 (3d Cir. 1996)).  If pled adequately, the allegations should be sufficiently clear to "avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of plaintiff's claim." Bolick v. Ne. Indus. Servs. Corp., 666 Fed. App'x 101, 104 (3d Cir. 2016) (citing Glover v. F.D.I.C., 698 F.3d 139, 147 (3d Cir. 2012)); (Doc. No. 19 at 7).

In this case, Plaintiff's claims against the Additional Defendants are not "simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Rather the Second Amended Complaint is largely unintelligible.  For example, Plaintiff continually refers to "Defendants" generally without explicitly delineating which specific Defendant(s) is responsible for his alleged injuries. Furthermore, Plaintiff relies on "vague and conclusory assertions of liability."  Bolick, 666 Fed. App'x at 104.  In this regard, Plaintiff merely alleges in Counts I and II that the Additional Defendants violated his right to be free from unreasonable seizures by stopping him on May 2, 2016, and June 16, 2017, without further describing their roles in the stops.  (Doc. No. 18.)

---

[8]  In the Motion to Dismiss, Defendants argue that Plaintiff's claims against all Defendants should be dismissed pursuant to Federal Rule of Civil Procedure 8.  (Doc. No. 19.)  Because the GPU, PPD, Board of Licenses and Inspections, Police Commissioner Ross and Mr. Richman will be dismissed for the reasons discussed above, and the City will be dismissed for the reasons set forth below, the Additional Defendants are the only parties that remain subject to Defendants' Rule 8 argument.

Moreover, Plaintiff fails to explain why the stop was unwarranted or how he was unreasonably detained by the responding officers. Instead, Plaintiff simply states without any additional support that the officers made a "de facto arrest" of him. (Id. ¶ 74.)

As a further example, Plaintiff complains that the Additional Defendants are responsible for the deprivation of his right to due process under the Fourteenth Amendment. Yet, he fails to explain how the procedure granted to him through the post-deprivation hearing on his LTCF revocation was inadequate. Finally, Plaintiff alleges that the Additional Defendants violated his right to keep and bear arms under the Second Amendment. Here too, Plaintiff relies on the mere fact that his LTCF was revoked and his firearm seized without detailing how either constitutes a violation of his rights. Thus, even if this Court were to accept the facts of the Second Amended Complaint as true, they would not "satisfy the elements of any of the causes of action [Plaintiff] attempts to raise."[9] Bolick, 666 Fed. App'x at 104.

In sum, Plaintiff's editorial description of events with regard to the Additional Defendants fails to include the material facts of Plaintiff's claims. As such, Plaintiff's claims against them will be dismissed.

---

[9]  Plaintiff continually refers to "docket No. 121203785" in his Second Amended Complaint. (Doc. No. 18 ¶¶ 73, 83, 95, 101, 102, 128, 134, 143, 161, 167, 188, 220.) This was the case of Doe v. City of Philadelphia, in which the City of Philadelphia reached a settlement agreement with a class of citizens. The settlement agreement provided that the City would enact policy changes regarding the application and maintenance of LTCF's. Normally, settlement agreements are "creatures of private contract law." Sullivan v. DB Invs., Inc., 667 F.3d 273, 312 (3d Cir. 2011) (quoting Bauer v. Transp. Sch. Dist. of City of St. Louis, 225 F.3d 478, 482 (8th Cir. 2001)). Therefore, Plaintiff would not be able to force the City to comply with the stipulations of the agreement, let alone consider them binding on officers of the PPD. Furthermore, Plaintiff provides no evidence of record showing that these policies have been instituted. To the extent that they have been instituted, Plaintiff provides no plausible argument as to how their alleged violation by the officers noted above leads to a valid constitutional claim.

### D. Plaintiff's Ongoing Municipal Proceeding Does Not Warrant a <u>Younger</u> Abstention

Defendants argue that this Court should abstain from hearing the present case due to Plaintiff's ongoing legal proceeding regarding his second LTCF revocation. (Doc. No. 19 at 8.) The Court disagrees.

<u>Younger</u> abstention jurisprudence stems from the idea that district courts should "abstain from adjudicating federal claims in deference to ongoing state proceedings." <u>ACRA Turf Club, LLC v. Zanzuccki</u>, 748 F.3d 127, 135 (3d Cir. 2014). The abstention doctrine was first developed to keep federal district courts from interfering with state criminal proceedings. <u>Id.</u> at 132. Since its inception, the United States Supreme Court has expanded the scope of a <u>Younger</u> abstention to encompass certain types of civil proceedings. The Third Circuit has admonished, however, that federal district courts still "have a 'virtually unflagging' obligation to hear and decide cases within their jurisdiction." <u>Id.</u> at 138 (quoting <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 77 (2013)). Therefore, a federal district court should abstain from hearing a case under <u>Younger</u> only where litigation will interfere with (1) a state criminal prosecution, (2) a state civil enforcement proceeding, or (3) a state civil proceeding "involving orders in furtherance of the state courts' judicial function." <u>Id.</u> (citing <u>Sprint</u>, 571 U.S. at 77). These three "'exceptional' categories . . . define <u>Younger</u>'s scope." <u>Sprint</u>, 571 U.S. at 78.

Courts abstaining under <u>Younger</u> with regard to a state civil enforcement proceeding have generally considered them "akin to a criminal prosecution." <u>Id.</u> at 79 (quoting <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 604 (1975)). The Supreme Court has noted that these actions often involve investigations and culminate in "the filing of a formal complaint or charges." <u>Id.</u> at 79-80. With regard to the third category covering state civil proceedings involving the state courts' judicial function, courts have only applied it in "a few exceptional types of cases . . . such as child custody

proceedings, civil contempt orders, and requirement for posting bonds pending appeal." <u>Godfrey v. Upland Borough</u>, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017).

Defendants argue that Plaintiff's second LTCF revocation proceeding is still "pending" because he has not yet appealed his second LTCF revocation to the Board of Licenses and Inspections or the Philadelphia Court of Common Pleas. Thus, Defendants argue that a <u>Younger</u> abstention is warranted in this case. Yet, even accepting Defendants' argument that Plaintiff's LTCF is still pending, the Court disagrees that a <u>Younger</u> abstention is warranted here.

First, this case does not involve a state criminal prosecution. Plaintiff is not facing criminal charges or penalties as a result of his alleged actions. Second, Plaintiff's proceeding is not a part of a civil enforcement action instituted by the State. Although the City of Philadelphia is involved, it has not filed a formal complaint or charges against Plaintiff, which would make the proceeding "akin to a criminal prosecution." <u>Sprint</u>, 571 U.S. at 79 (quoting <u>Huffman</u>, 420 U.S. at 604). Finally, Plaintiff's proceeding falls outside the ambit of the few "exceptional types of cases" recognized under the third category listed above. <u>Godfrey</u>, 246 F. Supp. 3d at 1094. Therefore, Plaintiff's LTCF revocation proceeding is not one that involves "orders in furtherance of the state courts' judicial function." <u>ACRA Turf Club</u>, 748 F.3d at 138 (citing <u>Sprint</u>, 571 U.S. at 77). Accordingly, the Court will not abstain from exercising jurisdiction over this case.

### E. Plaintiff Fails to Plead <u>Monell</u> Claims Against the City

In Counts II to XII, Plaintiff alleges the City violated his rights under the First, Second Fourth, Sixth, Thirteenth, and Fourteenth Amendments. (Doc. No. 18.) Defendants argue these claims should be dismissed because Plaintiff fails to plead facts plausibly establishing the elements of a <u>Monell</u> claim. (Doc. No. 19 at 10.) The Court agrees.

Plaintiff raises his claims against the City pursuant to 42 U.S.C. § 1983. (Doc. No. 18.)

Section 1983 states, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows federal plaintiffs to bring claims for local and state violations of federal law; however, it does not provide substantive rights.

In this case, Plaintiff brings Monell claims against the City. See Monell v. Dept. of Soc. Serv. of City of New York, 436 U.S. 658 (1978). In Monell, the Court held for the first time that Congress did not intend to hold municipalities liable under Section 1983 unless "action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 691. Therefore, to plead a viable Monell claim and hold a municipality liable under Section 1983, a federal plaintiff must establish "(1) that a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy or custom, or the deliberate indifference to the rights of citizens." Erdreich v. City of Philadelphia, No. 18-2290, 2019 WL 1060051, at *5 (E.D. Pa. Mar. 6, 2019) (citing Monell, 436 U.S. at 694-95). In this case, even if Plaintiff could establish the first prong of the Monell test, his claims nonetheless fail the second prong because he does not sufficiently plead that his constitutional rights were violated as result the City's policy, custom, or deliberate indifference to his rights.

A plaintiff may establish the second prong of the Monell test by showing his injury was caused by a city's (1) policy, (2) custom, or (3) deliberate indifference to the rights of its citizens. Erdreich, 2019 WL 1060051, at *5 (citing Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)). A policy is made when "a 'decisionmaker [with] final authority to establish

municipal policy with respect to the action' issues an official proclamation, policy, or edict." Wright v. City of Philadelphia, 685 Fed. App'x 142, 146 (3d Cir. 2017) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is evidenced by a policymaker's "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Id. at 147 (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

Additionally, a plaintiff may show a city's deliberate indifference by establishing that it failed to train its employees. To do so, a plaintiff must evince that the city's alleged failure "reflects a deliberate or conscious choice." Erdreich, 2019 WL 1060051, at *5 (quoting Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)). Moreover, a plaintiff must demonstrate that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Estate of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011)).

First, with regard to a city policy, Plaintiff fails to show how the alleged violations of his constitutional rights were a result of a municipal decisionmaker's "official proclamation, policy, or edict." Wright, 685 Fed. App'x at 146 (citing Andrews, 895 F.2d at 1480). The only reference to a PPD policy in the Second Amended Complaint is Plaintiff's allegation that the officers who responded to the May 2, 2016 incident "forced compliance to their will while acting under the color of law and in accordance with police policy." (Doc. No. 18 ¶ 73.) Plaintiff does not identify in this allegation a City policymaker or describe a declaration that is responsible for the alleged deprivation of his constitutional rights.

Additionally, there are no allegations in the Second Amended Complaint regarding a city custom. As such, Plaintiff fails to allege that his constitutional rights were violated because of a "longstanding practice" so engrained in the PPD as to be its "standard operating procedure." Wright, 685 Fed. App'x at 147 (quoting Jett, 491 U.S. at 737).

Finally, Plaintiff has not plausibly pled deliberate indifference to his rights by the City. To begin, Plaintiff fails to demonstrate that municipal policymakers knew that their employees, namely the officers of the PPD, would confront the situations at issue here. For example, Plaintiff does not allege sufficient facts to plausibly show that the City failed to adequately train its employees in revoking LTCFs or seizing firearms. Furthermore, there are no allegations that officers of the PPD frequently violate citizens' constitutional rights by revoking LTCFs or seizing firearms. As such, Plaintiff fails to allege that these situations involve "a difficult choice or a history of employees mishandling" them. Estate of Roman, 914 F.3d at 798 (quoting Doe, 660 F.3d at 180). Lastly, Plaintiff has not shown that an employee's "wrong choice" in these situations is likely to cause a deprivation of the rights at issue here. Id. Therefore, Plaintiff does not plausibly allege that the City was deliberately indifferent in this case.

Because Plaintiff has failed to plead that the alleged violation of his constitutional rights was a result of a City policy, custom, or the City's deliberate indifference to the rights of its citizens, his Monell claims in Counts II to XII will be dismissed.

**F. Plaintiff's State Law Claims Will Be Dismissed Pursuant to 28 U.S.C. § 1367**

Plaintiff also brings state law claims under the Pennsylvania Constitution in Counts I to XII. (Doc. No. 18.) According to 28 U.S.C. § 1367(c)(3), a federal district court may "decline to extend supplemental jurisdiction" over a plaintiff's state law claims if the court has already dismissed all federal claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).

Because this Court will grant Defendants' Motion to Dismiss with regard to Plaintiff's federal claims, the Court will decline to extend jurisdiction over Plaintiff's ancillary state law claims under § 1367(c)(3). As a result, Plaintiff's state law claims will be dismissed without prejudice.

### G. Plaintiff Will Not Be Given Leave to Amend

In this case, Plaintiff has not requested leave to amend his Second Amended Complaint. Federal Rule of Civil Procedure 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "the court should freely give leave when justice so requires." The Federal Rules of Civil Procedure, however, do not address the situation in which a plaintiff does not seek leave to amend a deficient complaint.

For civil rights claims, however, the Third Circuit has admonished, "when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). "[T]hese principles apply equally to pro se plaintiffs and those represented by experienced counsel." Id. (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

Here, the Court has twice granted Plaintiff leave to amend his Complaint. Moreover, Plaintiff was on ample notice of the deficiencies of his complaint in light of Defendants' two prior motions to dismiss. Despite these notices, Plaintiff has failed to provide factual allegations sufficient to withstand dismissal under Federal Rule of Civil Procedure 12(b)(6). Any further amendments of the Complaint would be futile in this case. Therefore, Plaintiff will not be granted leave to amend his Second Amended Complaint which is being dismissed under Rule 12(b)(6).

### V.   CONCLUSION

For reasons set forth above, the Court will grant Defendants' Third Motion to Dismiss the Second Amended Complaint (Doc. No. 18) on all counts.   An appropriate Order follows.